G-holson, J.
It is objected to the right of the plaintiff to recover, that the payment made by him was voluntary.
The question when such a payment is to be deemed volun *537 tary, was discussed in the case of Mays v. Cincinnati, 1 Ohio St. Rep. 268. It was held in that case, that “ money paid to procure a license, when issued upon the petition of the party, without objection or protest, is, in a legal sense, a voluntary payment, and can not be recovered back.” We have now the case where the payment was made with objection, and under protest. The authorities show that a protest, or notice of ■an intention to resist the claim, is, in such cases, material.
It is said, in the case of Valpy v. Manley, 1 C. B. 592, 602, “ that, where money is voluntarily paid, with full knowledge of all the circumstances, the party intending to give up 'his tight, he can not afterward bring an action for money had and received; but that it is otherwise where, at the time of paying the money, the party gives notice that he intends to resist the claim, and that he yields to it merely for the purpose of relieving himself from the inconvenience of having his goods sold.”
In the case of Taylor v. The Board of Health, 31 Pa. State Rep. 73, the officer of the Board, under its order, had collected a tax, which was afterward held to be illegal. But the court said, that the plaintiff could not say that the order was void, and therefore the officer acted on his own authority, and at his own risk, “ seeing that he paid voluntarily, and without attempting to deny the duty, or to warn the officer that he must proceed at his own risk. Had he given such warning, the validity of the tax would have been tested by the superior officers of the collector. He paid without dispute, and thus assented to the collection of the tax for public purposes, and of course to the application of it; and he ■has no shadow of equity against the collecting functionary.”
It is also stated in the case of Mays v. Cincinnati, as a general rule, that, “ to make the payment of an illegal demand involuntary, it must be made to appear that it was made to release the person or property of the party from detention, or to prevent a seizure of either by the other party having apparent authority to do so, without resorting to an action at law.” A strict application of this rule would embrace the case of the present plaintiff, for it can not be said that he *538 made the payment to release his person or property from detention, or to prevent a seizure of either.
In the case of Fullam v. Down, 6 Esp. 26, Lord Kenyon said, “that where a voluntary payment was made of an illegal demand, the party knowing the demand to be illegal, without an immediate and urgent necessity (or, as expressed by Mr. Bancroft, unless to redeem, or preserve your person or goods), it is not the subject of an action for money had and received.” The judge delivering the opinion in Mays v. Cincinnati, 1 Ohio St. 274, so quotes the language of Lord Kenyon as to make “ an immediate and urgent necessity,” and “unless to redeem or preserve your person or goods,” equivalent expressions, and as showing that a necessity to redeem or preserve one’s person or goods, could alone be deemed a case of urgent and immediate necessity. The grammatical construction of the language of Lord Kenyon, as reported in Espinasse, may properly admit of this construction. But it does not appear to have been so understood by Tindal, C. J., in the case of Valpy v. Manley, 1 C. B. 594, 603, who speaks of it as “ a form of expression which clearly assumes that, if there be an immediate and urgent necessity, or the payment is made for the purpose of redeeming or preserving one’s person or goods, the right to bring this sort of action exists.” The expression “immedia.te and urgent necessity ” was certainly indefinite, and an explanation by reference to something definite and capable of application was desirable. The most usual cases of involuntary payment, entitling a party to an action, are those made to redeem or preserve one’s-person or goods. But are they the only cases ? After an examination of the authorities, we think that there are other cases, and that the statement which has been cited from Mays v. Cincinnati should be qualified.
In the case of Parker v. The Great Western Railway Company, 7 M. and G. 253, the company made extra charges for the carriage of goods, to which they were not entitled, and which, under the act of Parliament, were illegal. An action was brought to recover the amount of such extra charges, and it was argued for the defendants, as stated by the court, “ that the payments- *539 were made voluntarily, with full knowledge of the circumstances, and that the plaintiff was not compelled to make' those payments; but, in each case, must be considered as having made a contract with the company to pay them a certain-sum of money as the consideration for the carriage of his goods; and that having made such contracts, he can not now retract, and recover the money paid in pursuance of them.” “ On the other side, it was urged, that these could not be considered as voluntary payments; that the parties were not on an equal footing; that the defendants would not, until such payments were made, perform that service for the plaintiff which he was entitled by law to receive from them without-making such payments; and that, consequently, he was acting under coercion.” And the court said: “We are of opinion that the payments were not voluntary. They were made in order to induce the company to do that which they were bound to do without them; and for the refusal to do which, an action on the case might have been maintained.”
The case of Morgan v. Palmer is very analogous to the present. The money was paid on obtaining a license; and it was held to have been illegally exacted. To the objection that the payment was voluntary, it was said by one of the judges: “ I agree that such a consequence would have followed, had the parties been on equal terms. But if one party has the power of saying to the other, that which you require shall not be done except upon conditions which I choose to impose/ no person can contend that they stand upon anything like an equal footing.” And by another: “ If, according to the usual course, the plaintiff was entitled to a license, the defendant was bound to grant it. The granting it was in the execution of his office, but the claim of a fee for so doing certainly was not. Then comes the objection, that this was a voluntary payment. In Bilbie v. Lumley, Burbane v. Dacres, and Knibb v. Hall, both parties might, to a certain extent, be considered as actors. Here, the plaintiff was merely passive,, and submitted to pay the sum claimed, as he could not otherwise procure his license.” 2 Barn. & Cress. 729, 734, 737. These cases show that money may be properly held to *540 have been paid involuntarily, or under coercion, where the position or interests of a party were such as to require from .another the performance of a duty enjoined by law, and he was illegally compelled to pay the money to induce such performance. Undue advantage is not to be taken of the party’s situation. There are other cases to which no express reference need be made, which sustain the same view. Dew v. Parsons, 18 Eng. Com. L. 87; Colwell v. Piden, 3 Watts, 327, 328; Boston and Sandwich Glass Co. v. City of Boston, 4 Metc. 181, 188; County of La Salle v. Simons, 5 Gilman, 513.
In view of these authorities, we think we are not entitled to stop short, as argued by the counsel for the defendant, •upon the objection that the payment in this case was voluntarily made, but must examine the question, whether that payment was illegally exacted. The plain language of a legislative enactment authorized the exaction of the money, but we are required to say that it was not obligatory upon the ■parties, because it was in violation of the constitution.
The 90th section of the act for the organization of cities and incorporated villages, provides that a city council may license exhibitions of shows and performances, and, “in granting such license, may exact and receive such sum or sums of money as the council shall think fit and expedient.” Under this authority, the city council of Cincinnati fixed the rate for a -license to the theater of the plaintiff. It is claimed that this was a tax, and that it is prohibited by certain provisions of the ■constitution. The provisions to which our attention has been directed, are section 2 of article 12, and section 5 of the same article. Now, neither of these sections, in terms, prohibits the granting licenses and making a charge therefor, or the imposition of a tax on a license. The second section requires the taxing of all property by a uniform rule. A license can not be regarded as property. Exchange Bank v. Hines, 3 Ohio St. Rep. 1-7. It is not, therefore, to be taxed as property under that section. An express direction to impose a tax on all property by a uniform rule, does not necessarily •exclude taxation upon that which is not property, or cover tha *541 whole ground included within the limits of the taxing power. City of Zanesville v. Richards, 5 Ohio St. Rep. 589, 593.
It has been said, “ In regard to taxation, equality is the-great idea of the constitution. Inequality was the pre-existing evil; equality is the remedy.” Exchange Bank, v. Hines, 3 Ohio St. Rep. 1-43. But this idea was directed to property. The anxiety was, that no property should escape its-proper and equal burthen. It is well known, that with difficulty any exemption, even of things regarded most sacred, was secured. Section 2 of article 12, and other sections of the same article, clearly show this anxiety. The things in contemplation were property of every possible description,, and an equal and uniform tax upon that property, according, to its true value in money. The exemptions to b.e allowed from that tax are specially enumerated. If there be a species-of taxation, or a subject matter for taxation, not embraced in that section, there is nothing in it by which they are prohibited or excluded. Laws taxing property must certainly conform with that section. But even as to property, it has been held that an assessment is not “ taxing,” within the meaning of that section. It has been so held, not only on the limited ground, that it is admitted in cities and villages, under section 6 of article 13 of the constitution; Hill v. Higdon, 5 Ohio St. Rep. 243, 247; but on the broader ground that “the power to authorize assessments, as distinguished from taxes-proper, is comprehended in the general grant of legislative-power to the general assembly.” Reeves v. Treasurer of Wood County, 8 Ohio St. Rep. 333.
If “ taxing” is limited by the context, to the ordinary taxing of property for general purposes, and does not exclude-an assessment which is a special tax, why should the designation of the ordinary subject of taxation, property, exclude others before well known and recognized ? The rule ex-pressio unius est exelusio alterius, has no application to such-a case; unless a mandate to do one of several things, completely and perfectly, can be regarded as a prohibition against doing the others in any manner.
We have been asked to adopt, as applicable to this case,. *542 remarks in the opinion of the court in the case of Mays v. Cincinnati, 1 Ohio St. Rep. 273, where it is said: “ The power is expressly conferred to levy taxes to defray the current expenses of the city, upon the real and personal property therein, as it appears upon the grand levy of the State. The city is thus clothed with ample power, by this mode of taxation, to raise money to accomplish all its lawful purposes. On any principle, this necessarily excludes all other modes of taxation, as any other becomes unnecessary to carry into effect its granted powers.” It is stated as one of the points decided in that case, that “ the power of taxation, being a sovereign power, can only be exercised by the general assembly when, and as conferred, by the constitution ; and by municipal corporations only when unequivocally delegated to them by the legislative body.” 1 Ohio St. Rep. 268.
The extent of the power of taxation, vested in the general assembly was not drawn in question in that case. It may be true, that the city corporation could only exercise such powers as were expressly granted in its charter, and the right to exercise a particular power being in dispute, it became a question of construction, whether it was conferred by the charter. There may be some analogy between such a question as to a charter, and a question as to the power of the general assembly under the constitution. Rut, in view of the provision of the constitution as to legislative power, the analogy is feeble. The first section of the second article of the constitution declares that “ the legislative power of this State shall be vested in a general assembly, which shall consist of a senate and house of representatives.” The same provision, in very nearly the same words, is found in the former constitution. It will be observed, that the provision is not, that the legislative power, as conferred in the constitution, shall be vested in the general assembly, but that the legislative POWER oe THIS State shall be vested. That includes all legislative power which the object and purposes of the State government may require, and we must look to other provisions of the constitution to see how far, and to what extent, legislative discretion is qualified or restricted. Hence *543 the difference between the constitution of the United States and a State constitution such as ours. In the former, we look to see if a power is 'expressly given ; in the latter to see if it is denied or limited. The power of taxation is included in the legislative power. In our former constitution it was limited in one particular, the prohibition of a poll-tax. In the present, it is regulated or limited in other particulars. Section 2, of article 12, is not a grant of power, but a regulation of the power already granted in the first section of the second article. The expression is, “ laws shall be passed,” not that the “ general assembly shall have power to pass.” So of every provision in the twelfth article, they either prohibit or regulate the exercise of the power of taxation in specified instances. This view is clearly sustained by the decision before referred to, in which it was held that the power to authorize assessments was comprehended in the general grant of legislative power. Reeves v. Treasurer of Wood County, 8 Ohio St. R. 333.
We think that the power to prohibit certain things to be done, unless a license be obtained, and to charge for such license, in many instances of its exercise, stands on the same principle as an assessment. An assessment stands on a principle of benefit to property; a charge for a license may be made in view of the special inconvenience and expense to the government, for the benefit of the individual who asks for the license. Things licensed may be such as should only be permitted under the regulation or supervision of public functionaries. The tax or charge may have reference to such regulation and supervision. Such is the case of exhibitors of shows and performances. An inquiry has to be made as to the character of those who propose to exhibit, and as to the nature of the thing to be exhibited. Then, the exhibibition may require additional attention from those entrusted with the care of the public peace, to prevent disorder and disturbance. The burden thus devolved on public officials, requiring, perhaps, an increase in their number or compensation, for the benefit of exhibitors of shows or performances, may justly authorize a charge, beyond the mere expense of filling up a blank license. The same principle that would *544 authorize a charge for the one, extends to the other. To say that it is a tax and goes into the public treasury, does not disprove this object. There is no magic in names.
The power to authorize licenses is, in terms, untouched in the constitution, except in a particular instance, and how far, and to what extent, this power may be used as a means of raising revenue, it is not necessary, nor proper, that we should inquire. It may be admitted that it could not be employed as a mode of taxing property, without reference to the uniformity and equality required in section 2, of article 12, of' the constitution. The general assembly could not do indirectly, that which it is prohibited from doing directly. We are satisfied that the license, and the charge for it authorized in this instance, in no manner violates that section. The other section, to which our attention has been directed, has no particular application in this case, that we can perceive,, and none has been suggested for our consideration.
Our conclusion is, that the charge for a license paid by the plaintiff was not illegally exacted, and that the demurrer to his petition was properly sustained.
Judgment affirmed.
Scott, O.J., and Sutliee, Peck and Brinkerhoee, JJ.,. concurred.