# Colwell *against* Peden.

3 w 327
136 664

*Assumpsit* will not lie against a landlord for money paid by a tenant under an impending distress, which has not been enforced under circumstances of wilful oppression or abuse, but has been resorted to *bona fide* to recover rent alleged to be in arrear, although none be actually due. The tenant's remedy is by action of trespass or replevin.

ERROR to the common pleas of *Alleghany* county.

The defendant in error was the plaintiff below, and brought against Margaret Colwell an action of *assumpsit* for money had and received under the following circumstances. Colwell leased to Peden a house for one year from the 1st of April 1833, at the same time contracting to make certain repairs before that day. Peden was to pay 100 dollars per annum, of which 25 dollars, *the last quarter's rent,* was to be paid by him in advance on his taking possession, as a continuous security, and the balance monthly. Peden entered and continued in possession, paying the monthly rent until July, when Colwell issued a warrant of distress to enforce the payment of the 25 dollars stipulated to be paid in advance, which was collected by the officer executing the warrant. Peden then abandoned the premises, alleging as a reason, the want of repairs and the presence of a nuisance, and immediately instituted an action before a magistrate for the 25 dollars thus paid, who rendering judgment in favour of Colwell, Peden appealed to the common pleas.

Error assigned.

The court erred in charging the jury that the money paid under the landlord's warrant could be recovered in an action for money had and received; that the plaintiff was not bound to resort to trespass or replevin.

*Stewart,* for plaintiff in error.

Under the act of assembly it was the duty of the plaintiff to cite the defendant before the magistrate. The proper action would have been trespass or replevin. *Purd.* 502. As the payment was voluntary, there cannot be a recovery in the present form of action. Knibbs *v.* Hall, 1 *Esp. R.* 84; 3 *Bos. & Pul.* 520. In the case in 1 *Cowp.* 414, the distress was wrongful. 1 *Esp. R.* 279; *Ibid.* 547; *Ibid.* 723; Oneida Indians *v.* Reynolds, 14 *Johns.* 336.

*Kingston,* for defendant in error.

The payment was not voluntary. Peden had but one alternative, to pay or have his furniture sold.

[Colwell v. Peden.]

The opinion of the Court was delivered by

GIBSON, C. J.—Lindon v. Hooper, *Cowp*. 414, which was ruled by a judge not remarkable at any time for adherence to forms of action, and expressly against the bent of his inclination in the particular instance, is similar in all respects to the case at bar, except that the distress there was for damage feasant. But the principle has since been followed out in Webber v. Aldrich, 2 *N. H. Rep.* 461, and Knibbs v. Hall, 1 *Esp. R.* 84, where money paid under an impending distress for rent was not suffered to be recovered back. There are doubtless other decisions not very obviously reconcilable to the principle of these, in which *assumpsit* has been held to lie for an exorbitant sum paid to redeem goods from pawn ; or to procure admission into a copyhold ; or to procure the renewal of a license ; or to recover back toll unduly exacted by a gate keeper : for in these cases, says Mr Starkie, in the second volume of his *Evidence, p.* 65, where the authorities are collected, the parties are *not* on a footing, and the the payment cannot be considered as voluntary. Perhaps the line of distinction may be more accurately drawn between cases where a legal remedy has been used as an instrument of extortion, and those where it has been used *bona fide* to enforce what was supposed to be a right. A defendant having paid an unfounded demand to be released from an ordinary arrest, would certainly not be allowed to recover the money back ; but his title would be incontestable if it appeared that he had been pounced upon among strangers and the money wrung from his inability to procure bail. So an innkeeper who had extorted an overcharge by detaining the cattle and baggage of a traveller, on pretence of enforcing his lien, could not allege that the payment was a voluntary one. These would be clear cases of oppression. But it has been said, and it is the pinch of the argument, that a landlord who distrains where nothing is due, being primarily a trespasser by statute and by common law, is necessarily a wrongdoer in the first instance ; and that so much cannot be affirmed of a plaintiff suing for an unfounded demand, who may become a trespasser but for an abuse of the process and by relation. He may however be a wrongdoer and an extortioner without being a trespasser, as in the instances already noticed in the collection of Mr Starkie. That such a plaintiff is a wrongdoer, even at the common law, is shown as well by the amercement to which he was subjected, as by the statutory imposition of costs which has succeeded the amercement in practice. The question in these cases, therefore, seems to be, not whether the party was originally a trespasser, but whether he was a wilful wrongdoer and sought an undue advantage from the abuse of a remedy given him for a better purpose. Now, though a landlord who distrains for what is not demandable is in strictness a trespasser, he is not necessarily a voluntary one, as he may have transactions with his tenant which leave it doubtful whether the rent be not satisfied in fact, or extinguished in law ; and in doubtful circumstances it surely would not be an abuse of the re-

[Colwell v. Peden.]

medy by distress to use it in order to raise the question of payment or extinction for legal adjudication. It might doubtless be as effectually raised by an action of covenant or debt, but not so safely for the landlord in the event of its being found for him; and I know of no reason or rule which compels him, in a doubtful case, to resort to the least efficacious of his remedies. And where he distrains, to have an immediate decision of the right, it would be palpably unreasonable to suffer the tenant to baffle him by paying the demand and *holding his liability to an action of assumpsit* impending over him for six years, instead of promptly meeting the question. It may be said that he would, in any event, remain liable for the same period as a trespasser, and that the matter would at last come but to a distinction as to the form of the action. By the British statute of limitations as well as our own, there undoubtedly is the same period for actions of trespass that there is for actions of *assumpsit;* but being a matter of positive regulation, the period may cease to be the same, and an alteration of it might, according to the hypothesis, require a correspondent alteration of a principle of the common law to prevent the tenant from eluding the statutory restriction by merely changing the form of the action. In some of our sister states there may be a difference of limitation even now; and are we to expect a different rule in these for the point before us? In an examination of it on principle, the accidental coincidence of limitation must be immaterial; and there seems, therefore, to be much force in the remark of Mr Starkie, that " the plaintiff cannot substitute this form of action for the more appropriate ones of trespass or replevin, where they are the specific ones provided by the law for the particular grievance." In either of these, the question may be tried as advantageously for the tenant as in an action of *asssumpsit;* nor is there any reason why he should be suffered to turn a cause of action essentially local into a transitory one, by changing the form of the remedy and shifting the position of the parties to the issue. This last consideration was decisive of the form of the action in Mather *v.* Trinity, 3 *Serg. & Rawle* 509; and would, of itself, be decisive of it here. On principle as well as authority, then, a tenant cannot maintain *assumpsit* for money paid to relieve his goods from distress.

Judgment reversed.