## Edgar *versus* Shields *et uxor*.

1. An administrator cannot be compelled to make distribution of money belonging to an intestate until the expiration of one year from the granting of administration.

2. Before a distributee is entitled to distribution, she must give security to be approved of by the Orphan's Court to refund, to pay after discovered debts, &c.

3. When a party pays money voluntarily to a person who may with good conscience receive it, and there is no unfair practice or deceit in obtaining it, although it could not be recovered by law, it cannot be recovered back again.—Per WILLIAMS, Judge of District Court, appproved by Supreme Court.

ERROR to the District Court of *Allegheny county*.

This was an action of assumpsit by Wm. Edgar, administrator of Edward Wilson, deceased, against James Shields and Jane, his wife, to recover $253, with interest from October 2, 1849. Edward Wilson died at the St. Clair Hotel, in Pittsburgh, on the 17th of June, 1849, unmarried and without issue. After his death, his remains were removed to the house of his mother, the said Jane Shields. The day after his death the sum of $300, in bank notes, was found in a "pillow slip," brought from the hotel with the deceased, which belonged to him. Mrs. Shields retained it and treated it as the money of her deceased son. A small portion of it was expended in the payment of the funeral expenses, and the residue held and retained by her, amounting to the sum of $253. More than three months after the reception of the money, Mrs. Shields executed and delivered to Edgar the following paper, or receipt, which was given in evidence on the trial by the plaintiff, viz.:

"Rec'd, Pittsburgh, Oct. 2, 1849, of W. M. Edgar, two hundred and fifty-three dollars, that being the amount *in my hands* on settlement of Edward Wilson's estate, deceased.

her<br>JANE ✕ SHIELDS."<br>mark.

The administrator filed his account in the Register's office, October 27, 1854, in which he charged himself with $330.81, the

[Edgar *v.* Shields et uxor.]

whole estate of his intestate, including the $300 found in the "pillow slip," and retained by Mrs. Shields, and claimed credit for the same amount, including the aforesaid sum of $253 retained by Mrs. Shields. Exceptions were filed by Jacob Ashton, a creditor, to the allowance of the credit of $253, in the hands of Mrs. Shields, as aforesaid. Upon reference to an auditor, the exceptions were sustained and a balance reported, (including *interest,*) amounting to $310.80, for distribution. The auditor's report was duly confirmed, (with notice to Jane Shields,) and the fund distributed by an auditor—first, to costs, and the residue to Jacob Ashton, leaving a small portion of his claim unpaid.

'This report and distribution was confirmed by the Orphan's Court. The defendants had due notice of all these proceedings. The entire estate of Edward Wilson, deceased, amounted only to $330.81, including the $300 found in the pillow slip. Of this last sum the administrator, Edgar, never had control; and at the time Mrs. Shields got the money, neither knew of Ashton's claim, and each supposed the estate was not indebted, and that Mrs. Shields would be entitled to the money, as the distributee of her son's estate. A witness had frequent conversations with Mrs. Shields about the Ashton claim, while in suit against Edgar, and said that " if Edgar lost the suit, he should never lose by that— that she would pay the money—that he should be at no loss by her."

The court below, WILLIAMS, J., after reviewing the testimony, charged the jury as follows:

" This action has been brought to recover back the money paid to defendant's wife, on the ground that it was paid in mistake and ignorance of Ashton's claim. Is the plaintiff entitled to recover back the money which he voluntarily paid the defendant, as decedent's distributee, under the intestate laws ?

" The administrator was under no obligation, nor could he have been compelled to make distribution of the money belonging to the intestate, until the expiration of one year from the granting of the administration of the estate; and before the defendant, as distributee, would have been entitled to receive any portion of the estate, the plaintiff might have compelled her to give real or personal security, to be approved by the Orphans' Court, in such sum and form as the court might direct, with condition that if any debt or demand should be afterwards recovered against the estate of the decedent, or otherwise be duly made to appear, she would refund the money paid, or a rateable part thereof, sufficient to satisfy such debt or demand, and the cost and charges attending the recovery of the same. Act of 24th February, 1834, sections 38–41.

" The plaintiff was under no legal obligation to distribute the money in his hands, as administrator, at the time he paid the

[Edgar *v.* Shields et uxor.]

sum in controversy to the intestate's mother. He must, therefore, be considered as having paid it voluntarily, and the defendant, as the distributee of her son's estate, might, in good conscience, receive it. Neither party, so far as appears, was aware of the intestate's indebtedness, and both acted in good faith. Is the defendant then bound to refund the money? It seems to me that this case comes within the general principle of law, that whenever the party may with good conscience receive the money, and there is no unfair practice or deceit in obtaining it, although it be money he could not recover at law, the party paying cannot recover back. *Morris* v. *Tarin,* 1 Dall. 148; *Espy* v. *Allison,* 9 W. 462; *Carson* v. *M'Farland,* 2 R. 118; *During's Appeal,* 1 *Harris,* 224; *Hinkle* v. *Eichelberger,* 2 Barr, 483.

"In the case of *Hinkle* v. *Eichelberger,* the question was, whether an executor who had paid a legacy to the testator's widow was a competent witness to establish the will on an issue of *devisavit vel non?* In delivering the opinion of the court, Gibson, C. J., says: 'Now, the revocation of the probate in this instance would certainly burden him with the loss of the money paid to the widow, unless he could recover it back. But he paid it voluntarily, as well as with full knowledge of the circumstances; and she might retain it as conscientiously as did the creditor in *Carson* v. *M'Farland,* 2 Rawle, 218, who had received a voluntary payment of more than his proportional part of the assets of an insolvent estate. Though the action for money had and received is a liberal one, and lies, it is said, whenever a party has received money which he is bound by natural justice to refund, it has never been extended to money received without unfair practice or deceit, though the receiver could not have recovered it by law.' The principle here recognized and sanctioned, in all the cases cited, is conclusive, as it seems to me, against the plaintiff's right to recover the money paid defendant's wife, and I so charge the jury. If the general question were an open one, I should be disposed to allow the plaintiff to recover; but, in my opinion, the law is otherwise settled.

"The plaintiff's counsel ask the court to instruct the jury: 'That if they believe from the testimony that the defendant, Jane Shields, retained the money in dispute, with the understanding that she was the only heir, and entitled to the same under the intestate laws, the plaintiff is entitled to recover under the evidence in this case, for the purpose of paying a debt legally established by a court having jurisdiction.'"

*Answer.*—"This point is refused. The plaintiff could not recover without an express promise by the defendant to repay the money, of which there is no evidence in this case."

Which charge and answers were assigned as error.

*Marshall* and *Browne,* for plaintiff in error, contended that where there has been an unjust receipt of money, or where a party has received money which he is bound by natural justice to refund, an action for money had and received lies. *Carson* v. *M'Farland,* 2 R. 118; *Espy* v. *Allison,* 9 W. 462; *Bogart* v. *Nevin,* 6 S. & R. 369; *Tompkins* v. *Barnet,* Salk. 22; *Boas* v. *Updegrove,* 5 Barr, 516; *Newman* v. *Rutherford,* 2 Am. L. J. 83; *Christman* v. *Siegfried,* 5 W. & S. 400.

Wherever there is a payment in ignorance or misconception of a fact, the party will be put in *statu quo;* as, for instance, one who voluntarily pays money by mistake to another who claims it as a debt, may recover it back, where the payment was made in a mistake, arising from misconception, error, or ignorance of the fact. *Ege* v. *Koonts,* 3 Barr, 109; *Burr* v. *Veeder,* 3 Wendell, 412; 17 Mass. Rep. 380; 8 Con. 195.

*Flenniken,* for defendant in error, argued that the plaintiff paid the money sought to be recovered back, to the defendant voluntarily, and of his own mere motion, and that the defendant had a good right in conscience to receive it as heir to her son; and hence, under the decisions of this court, it could not be recovered back; and referred to *Carson* v. *M'Farland,* 2 R. 118; *Hinkle* v. *Eichelberger,* 2 Barr, 483; *During's Appeal,* 1 H. 240; *Espy* v. *Allison,* 9 Watts, 462; *Morris* v. *Tarin,* 1 D. 148; *Irwin* v. *Hamlin,* 10 S. & R. 220; *Bryant* v. *Nevins,* 6 S. & R. 362; *Matthews* v. *Pearson,* 13 S. & R. 256.

The opinion of the court was delivered January 12, 1857, by

WOODWARD, J.—The opinion of the court is a clear and concise statement of the law of the case, and we affirm the judgment for the reasons given.

Judgment affirmed.

LEWIS, C. J., dissented.