## Matilda Montgomery's Appeal.

1. The administrators of M., of whom his son was one, made a number of payments to the widow of decedent, on account of her distributive share of decedent's estate during the years 1870 and 1871. Credits for these payments were claimed and allowed in their second administration-account, filed November 18th 1872. The payments were made voluntarily, without a refunding bond or an agreement to repay. It was alleged that she was overpaid $2699.94, and the creditors of the son, one of the administrators, claimed, in 1878, to have this sum set off in the distribution of the son's assigned estate, against $2528.83 arrearages of dower due the widow, and which was charged on said estate. *Held*, reversing the court below, that this could not be done, as the payment was voluntary and barred by the Statute of Limitations.

2. When an administrator pays out money he is presumed to know the condition of the estate. The assets are in his hands and he is familiar with their amount and value. He ought to know and is chargeable with knowledge of the amount of claims against the estate when he makes a payment on account of a distributive share.

November 20th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Washington county*: Of October and November Term 1879, No. 195.

Appeal of Matilda Montgomery from the decree of the court dismissing the exceptions to and confirming the report of the auditor appointed to distribute the fund in the hands of the assignee of A. J. Montgomery.

On June 27th 1876, A. J. Montgomery made a voluntary assignment of all his property to Dr. John W. Kelly, in trust for the benefit of his creditors. Under this assignment there passed to the assignee certain tracts of land, which had been taken by Montgomery, at the valuation, under partition proceedings, in the estate of William Montgomery, deceased, charged with $5850.48, upon which annual interest was to be paid to Matilda Montgomery, widow of said decedent, during her life. This land was sold by the assignee, under an order of the Court of Common Pleas of Washington county, discharged of liens, under the provisions of the Act of February 17th 1876. The assignee settled his final account, which was confirmed August 19th 1878, and an auditor was appointed to report distribution.

At the first meeting of the audit, on September 19th 1878, Matilda Montgomery claimed out of the proceeds of the real estate above named, her arrearages of dower, amounting, as ascertained by the auditor, to $2528.83, the lien of which had been discharged by such sale. Her claim was objected to by certain creditors upon the ground, that in the distribution of the personal estate of the said William Montgomery, deceased, the administrators, Dr. John W. Kelly and A. J. Montgomery (the assignor), had paid the widow $2699.94 more than her distributive share, and that this should be set-off against her arrearages of dower.

This claim of set-off arose under the following facts: William Montgomery died on the 29th of April 1870, intestate, leaving to survive him, a widow, Matilda Montgomery, the appellant, and three children, A. J., James and William Montgomery. On the 25th of May 1870, letters of administration were granted to A. J. Montgomery, the assignor, and Dr. John W. Kelly, who, on June 15th 1870, filed an inventory of the personal estate of the decedent, which amounted to $32,183.46, and which was increased in their first settlement made July 18th 1871, to $35,051.80.

The administrators paid Matilda Montgomery on account of her distributive share of the personal estate of the decedent, $4973.53, as follows: June 14th 1870, $50; June 15th 1870, $285.20; July 8th 1870, $153.33; July 28th 1870, $100; November 8th 1870, $1300; January 18th 1871, $2700; May 6th 1871, $335, and November 11th 1871, $50. All of these payments, except

[Montgomery's Appeal.]

the last, were made by the administrators, prior to tne settlement of their first account; and the receipts taken by them from Mrs. Montgomery, recite, "that the sum paid is to be deducted from my share of the personal estate." No refunding bond, or agreement to repay, was asked for, as it was then thought by the administrators that the widow's interest would be much more than the sum paid; and in the settlement of their second account November 18th 1872, they took credit, on distribution, with the above amounts paid the widow.

In May 1876, nearly five years after the last of the above payments, the administrators settled their final account, by which it appeared, that by reason of the debts of the intestate and large claims which they were unable to collect, they had overpaid Mrs. Montgomery on distribution $2699.94. No demand, however, was ever made by them upon her for its repayment, and no attempt was made to collect it until the first meeting of the audit, on September 19th 1878, more than six years from the date of the last payment, when the creditors claimed to have it set-off against her arrearages of dower due from A. J. Montgomery.

Their right to this was denied by the widow, on the ground:

1st. That the administrators who knew, or ought to have know, the assets of the estate, voluntarily paid her this money, as a part of her distributive share of the personal estate, without any deceit or unfair practice on her part in obtaining it, and

2d. That more than six years have elapsed from the time of such payments, and no refunding bond or receipt having been given, there could be no recovery by A. J. Montgomery, or those claiming under him, on any implied promise.

The auditor, however, was of the opinion, that the overpayments to Matilda Montgomery were not such voluntary payments as could not be recovered back; and that the Statute of Limitations did not begin to run, until the administrators discovered a deficiency of assets by their settlement in 1876. He, therefore found, that the amounts overpaid the widow on distribution of the personal estate in 1871, should be set-off against the arrearages of dower. Matilda Montgomery excepted to the report, but the court dismissed the exceptions and confirmed the report. From this decree this appeal was taken.

*H. J. Vankirk* and *John W. & A. Donnan*, for appellants.— Could A. J. Montgomery, on September 19th 1878, have recovered from the appellant, the amount she had been overpaid in the distribution of the personal estate of William Montgomery, deceased? If he could not, then it must be conceded that neither his assignee nor creditors, claiming under the assignment, could take any higher right, and that the decision of the auditor is erroneous. The widow knew nothing as to the amount she was entitled to

receive on distribution, except through the administrators; they had the means of knowing the nature and character of the assets of the estate, and of their own motion paid her $4973.53, as a part of her distributive share of her personal estate, without any agreement whatever for its repayment; and the receipts taken by them induced the belief, that she was entitled to further payments. To allow the administrators now, seven years afterwards, and after the money has all been expended, to recover it, would be inequitable and unjust, and would be extending the doctrine of implied promises further than any case yet decided: Natcher v. Natcher, 11 Wright 499; Edgar v. Shields, 1 Grant 361; Hinkle v. Eichelberger, 2 Barr 483; Lackey v. Mercer Co., 9 Id. 318; Irvine v. Hanlin, 10 S. & R. 219; Carson v. McFarland, 2 Rawle 118; Dougherty v. Snyder, 15 S. & R. 89; Boas v. Updegrove, 5 Barr 518.

If the money was paid by mistake, as is claimed, and the law implies a promise to pay, then the right of action accrued at once, and on the next day, an action could have been brought to recover the money paid. The Statute of Limitations would then begin to run from the date of the payment, and after six years, the right to recover would be barred: Angell on Limitations, sect. 116; Steele's Adm'r v. Steele, 1 Casey 156; McClure v. McClure, 1 Grant 222; Gilmore v. Reed, 26 P. F. Smith 462.

*A. W. & M. C. Acheson* and *Braden & Miller*, for appellees.— The receipt states, that the sum of $2700 should "be deducted from my share of personal property of estate;" and it was not until within the statutory period, that it was ascertained by the further settlement, that it would be impossible to carry out this stipulation. The Statute of Limitations could only affect the contract from the time it was ascertained, that the appellant was paid her full distributive share without using this receipt.

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

It is not denied that the appellant had a valid claim for arrears of dower charged upon the real estate of A. J. Montgomery, the assignor. The auditor finds the amount of it to be $2528.83. He declined to award it to her, however, for the reason that the appellant is indebted to the assignor in the sum of $2699.94, being the amount overpaid her on the distribution account of the administrators of the estate of William Montgomery, deceased. The court below sustained the auditor in this ruling, and it forms the single subject of the three assignments of error.

It appears that the administrators of William Montgomery, deceased, of whom A. J. Montgomery, the assignor, was one, made a number of payments to the appellee as widow of the decedent on

account of her distributive share during the years 1870 and 1871. Credits for these payments were claimed and allowed in their second administration account, filed November 18th 1872. The payments were made voluntarily, without a refunding bond or an agreement to repay. It is now alleged she was overpaid the said sum of $2699.94, and the creditors of A. J. Montgomery, one of said administrators, claim to have it set off in the distribution of his assigned estate.

Without discussing the right of the creditors to make such a set-off, it must fail, for the· reason that A. J. Montgomery could not himself recover the money back. The payment was voluntary, and it is barred by the Statute of Limitations. That the payment was voluntary is settled by Edgar *v.* Shields, 1 Grant 361 ; Carson *v.* McFarland, 2 Rawle 118 ; Hinkle *v.* Eichelberger, 2 Barr 483 ; Natcher *v.* Natcher, 11 Wright 496. That some of the payments at least were made after the expiration of a year from the granting of the letters of administration we do not regard as material, as a payment by the administrator even then without a refunding bond or an agreement to repay was voluntary. The auditor and the court below were of opinion, however, that the statute did not begin to run until the time the over-payment was discovered, to wit: in 1876. But when an administrator pays out money, he is presumed to know the condition of the estate. The assets are in his hands, and he is familiar with their amount and value. He ought to know, and is chargeable with knowledge, of the amount of claims against the estate when he makes a payment on account of a distributive share. It would be a great hardship upon distributees, to whom an administrator has voluntarily made payments on account of their shares, if they may be called upon for repayment after the lapse of years. They may have spent it, or increased their style of living in entire good faith, and in ignorance of any over-payment. We are of opinion that the statute commences to run against the administrator from the time of such payments.

The decree is reversed at the costs of the appellees, and it is ordered that distribution be made in accordance with this opinion.