# Union Insurance Co. *versus* The City of Allegheny.

1. Money voluntarily paid under a claim of right where there has been no mistake of fact cannot be recovered back; nor does the fact that the money is paid under protest, of itself, give a right to recover the sums so paid. The payment must have been made under compulsion to prevent the immediate seizure of goods or the arrest of the person.

2. A., the mortgagee of premises in the city of Pittsburgh, bought in the land at sheriff's sale for $50 under a levari facias issued upon a judgment obtained on his mortgage. Municipal taxes had been assessed on the property for the two years previous to the sale, the claims for which were filed subsequently thereto. For want of goods and chattels on the premises the taxes could not be collected and a fi. fa. was issued by the city solicitor under the Act of April 14th 1863, § 6, by virtue of which the lands were advertised to be sold, whereupon A. paid the amount supposed to be due under protest. It being afterwards acknowledged that the taxes were discharged by the sheriff's sale, A. brought an action of assumpsit against the city to recover the amount so paid. *Held,* that the payment was made voluntarily and could not be recovered back.

October 9th 1882. Before SHARSWOOD, C. J., MERCUR, GOR-
DON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 1 of *Allegheny
county :* Of October Term 1882, No. 84.

This was an action of assumpsit brought by the Union Insur-
ance Company against the City of Allegheny to recover the
amount of certain taxes which it had paid to the city under
protest.

By agreement the parties dispensed with trial by jury and
submitted the case to the court under the Act of April 22d
1874. STOWE, P. J., before whom the case was tried, found the
facts to be as follows :

"From the evidence in this case it appears that Wm. A.
Logan was the owner of certain property in the City of Alle-
gheny, and gave a mortgage thereon to the Union Insurance
Company in the sum of $4,000 dated August 28th 1874.
That subsequently a scire facias was issued and judgment ob-
tained thereon at 687 January Term, 1877, and upon an alias
lev. fa., at 144, July Term, 1877, with notice to Jos. Logan,
and Nancy, his wife, as terre-tenants, the property was sold to
the plaintiffs, and deed duly executed by the sheriff, July 21st
1877, for the consideration of $50. Previous to said sale,
taxes had been assessed on said property for the years 1875
and 1876. Municipal claims were filed for each of said claims
in March 1878, under the 6th section of Act, 14th April, 1863,
which is as follows :

".That in case any of the (said) collectors shall return to the
said receiver or treasurer, that any of said taxes cannot be col-
lected for want of goods and chattels on which to levy, the said
receiver or treasurer shall certify the same, in each case to the
solicitor of Allegheny city, whose duty it shall be to file said
certificate in the office of the prothonotary of the district court
of Allegheny county, (and said prothonotary shall enter the same
on the judgment docket as judgments are entered), and a writ
of fi. fa. shall forthwith be issuable thereon by virtue of which
the sheriff of Allegheny county shall levy upon and sell the real
estate upon which said taxes have been assessed, on or before
return day, or within six days thereafter, which sale shall vest
in the purchaser of said real estate, all the right, title and inter-
est of the defendant in said writ of, in and to said real estate so
sold."

In the case of the assessment and claim filed for the year
1875, at No. 89, April Term 1878, a fi. fa. was issued to first
Monday, April, 1878, and a return of nulla bona ; June 14th
1878, al. fi. fa. to first Monday, July 1878, and subsequently real
estate advertised for sale for Monday, July 1st and June 29th
1878, taxes and costs paid by the Union Insurance Co. (plain-

tiff in this suit), to W. B. Rodgers, solicitor for Allegheny city, under protest. In the other case of claim filed for taxes for 1876, at No. 90 April Term 1878, the taxes, costs, etc., (the city having threatened to levy upon and sell the property), were paid to the solicitor for Allegheny, under protest, 19th June, 1879, without fi. fa., and this action is brought to recover back both of said amounts with interest."

The defendant presented the following points :

1. That under all the evidence in this case the plaintiff is not entitled to recover.

2. That as regards the amount paid in lien No. 90, April Term 1875, amounting to $135.01, such payment was voluntary and cannot be recovered back.

The court affirmed these points, and entered judgment for the defendant, the following opinion being filed :—It is urged by defendant's attorney that under the foregoing facts the plaintiff has no right to recover in this suit because the payment of the taxes of the plaintiff, if they constituted no lien upon the property upon which the claim was filed by Allegheny City (as contended by plaintiff), was what the law terms voluntary. To this it is answered that in one case an actual levy had been made upon the real estate of plaintiff for the taxes, under the pressure of which the amount was paid under protest, and in the other, that the city threatened to proceed and levy upon plaintiff's real estate, and to save further annoyance and costs that amount was paid under protest.

The question is, therefore, whether plaintiff can recover back in either or both cases the money so paid to Allegheny City. We assume that defendant had no right to recover the money from plaintiff, but it is clear that plaintiff knew all the facts in relation to the assessment of the taxes previous to this purchase, out of which it was claimed liability arose, and that the city was not guilty of any fraud or concealment in the premises. There seems to have been a mutual mistake as to the law only. The facts out of which the claim originated were well known to both parties. It is a well settled rule of law that a tax voluntarily paid, even though illegally assessed, when there is no misplaced confidence and no artifice or deception or fraudulent practice by the other, can not be recovered back.

Were then these taxes paid under such circumstances as make the payment involuntary? In other words, do the facts alleged constitute duress or coercion? It is now settled that money paid under protest does not make the payment a compulsory one, even though the party be under no legal obligation to pay : 2 Dillon on Mun. Corp. § 947, and cases cited. Coercion or duress which will render a payment involuntary must in general consist of some actual or threatened exercise of power, possessed or believed

to be possessed by the party exacting or recovering the payment over the person or property of another, from which the latter has no other immediate relief than by making payment: Id. § 943. (See also First National Bank of Americus *v.* Mayor of Americus, decided by the Supreme Court of Georgia, Sept. 27th 1881.)

It is claimed, however, that even if the law is so, and plaintiff cannot recover in the case where no levy was made or execution issued, yet where there was an actual levy and advertisement of the property, as in the lien at No. 89, April Term 1878, the defendant had no other remedy to relieve his property from sale, and this constituted duress sufficient to make his payment under protest involuntary. This, however, is a mistake. The plaintiff was in no danger of having his property sold, because no title would have passed to the purchaser; neither his title nor his possession would have been affected by it in the least, and the sale would have amounted to nothing so far as he was concerned. It is said, however, that there are several decisions in Pennsylvania which indicate that where the tax is illegal or the party not under any legal obligation to pay, a payment under protest is sufficient to give him a right to recover back, even where there is no danger of immediate or present seizure of person or property. I do not so understand the cases, and answer in the language of C. J. WAITE, in U. P. R. R. Co. *v.* Commissioners, 98 United States Rep. 541, which I deem specially applicable to our own cases: "There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary, but on examination it will be found that the protest was used to give effect to the other circumstances of the case."

Having said this much it would be a mere affectation of learning to do more than refer to Dillon on Municipal Corporations, Vol. 2, under the title of "Voluntary Payment." A careful examination of all the authorities cited, not only in this case, but in another now under consideration involving the same principle, has led me to accept the views of that author as being sustained by both reason and authority, and to conclude that the coercion must be imminent and the actual or threatened exercise of power over the person or property must be such that the owner has no other means of immediate relief than payment, and that payment under protest without such circumstances is not sufficient to make it, in law, involuntary, and that it necessarily follows (as said at section 943, Id.), that illegal taxes or other public exactions paid to prevent a seizure or detention of property does not apply to payment to an officer having in his hands a precept

or writ which can only be levied upon the lands of the owner.

The court subsequently overruled exceptions filed to the foregoing opinion, whereupon the plaintiff took this writ, assigning for error the answers of the court to the defendants' points as contained in the above opinion, and the action of the court in entering judgment in favor of the defendant.

*Thomas C. Lazear* for the plaintiff in error.—The lien of the taxes was discharged by the sheriff's sale : Allegheny City's Appeal, 41 Pa. St. 60 ; Burgwin *v.* Burchfield, 11 Pitts. L. J. (N. S.) 13 : Payment with protest under circumstances amounting to duress puts it in the power of the plaintiff to recover back the money paid: Grim *v.* Weisenberg School Dist., 57 Pa. St. 443 ; Allentown *v.* Saeger, 8 Harris 421 ; Hospital *v.* Philadelphia, 24 Pa. St. 231 ; Stinger *v.* Commonwealth, 26 Pa. St. 426 ; McCrickart *v.* Pittsburgh, 88 Pa. St. 133 ; Erskine *v.* Van Arsdale, 15 Wall. 75 ; Bank *v.* Watkins, 21 Mich. 483 ; Allen *v.* Burlington, 45 Vt. 214. The distinction taken in the court below between a payment made to prevent a sale of land and one made to prevent a seizure of goods is without authority. The duress is the same in both cases : Lamborn *v.* Commissioners, 97 U. S. 181 ; Guy *v.* Washburn, 23 Cal. 112 ; Stephen *v.* Daniels, 27 Ohio St. 544 ; Mariposa Co. *v.* Bowman, Deady 228.

*W. B. Rodgers,* city solicitor for the defendant in error.— The payment in this case was voluntarily made under a mistake of law and therefore cannot be recovered back : Boas *v.* Updegrove, 5 Pa. St. 516 ; Espy *v.* Allison, 9 Watts 462 ; Carson *v.* McFarland, 2 Rawle 118. A protest without compulsion is unavailing : Thomas *v.* Phila. & Reading R. R., 1 W. N. C. 621 ; 2 Dillon Municipal Corp. § 947.

Mr. Justice Mercur delivered the opinion of the court, November 20th 1882.

This suit was to recover money paid by the plaintiff under the following circumstances. One Logan owned certain lands, in the City of Allegheny, and in August 1874 executed a mortgage thereon to the plaintiff in the sum of $4,000. The latter obtained judgment, issued execution, sold the property at sheriff's sale, bid it in for $50 and obtained a deed therefor in July 1877.

Municipal taxes had been assessed on the property for the years 1875 and 1876 which could not be collected for want of goods and chattels on which to levy. In March 1878 claims for these taxes were filed in the Prothonotary's office under the Act of 14th July 1863, which provides for the entry of judgment thereon, the issuing of execution forthwith, and a sale of the

real estate. Execution had issued on one of the judgments thus obtained, the real estate then owned by the plaintiff was levied on, and advertised to be sold. The plaintiff paid the judgment under protest. A year thereafter the city solicitor demanded of the plaintiff payment of the other judgment for the taxes of 1876 with threat unless paid he would proceed to enforce payment by sale of its property. The plaintiff there-. upon paid this judgment under protest. This action is to recover the sums thus paid for the taxes, interest and costs covered by both judgments.

It is conceded now that the lien of these taxes was discharged by the sheriff's sale of the property made in 1877. The filing of the claims the year thereafter created no lien on the property. Does the fact that they were paid under protest when they were no lien, to prevent the form of sale being had, give a right to recover the sums so paid?

It is well settled as a general rule of law, that money voluntarily paid on a claim of right, where there has been no mistake of fact, cannot be recovered back on the ground that the party supposed he was bound in law to pay it when in truth he was not : Clarke *v.* Dutcher, 9 Cowen 674. · He shall not be permitted to allege his ignorance of the law, and it shall be considered a voluntary payment : Id. In Brisbane *v.* Dacres, 5 Taunt. 144, Mr. Justice Gibbs said, where a man demands money of another as a matter of right, and he pays it with a full knowledge of the facts on which the demand is founded, he can never recover back the sum he has so voluntarily paid. The same principle is ruled in Morvall *v.* Wright, 1 Wend. 355; and Lyon *v.* Richmond, 2 Johns. Ch. Rep. 51. Mr. Chief Justice Waite in pronouncing the judgment of the court in Railroad Co. *v.* Commissioners, 8 Otto 541, which was a suit to recover back, taxes which the company had paid, declared it to be a rule of the common law that "where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary, and cannot be recovered. And the fact that the party at the time of making the payment files a written protest does not make the payment involuntary." He evidently referred to personal property of which the owner might summarily be dispossessed.

In Colwell *v.* Peden, 3 Watts 327 it was held that assumpsit would not lie against a landlord for money paid by a tenant after a warrant of distress had issued in good faith to recover rent alleged to be in arrear, although in fact no rent was actually due. It was there argued that the payment was

not voluntary, that the tenant must either pay or have his furniture sold; yet the court held the tenant could not recover by reason of there being no rent due. He might have maintained either trespass or replevin. Espy *v.* Allison, 9 Id. 462, was the case of a purchaser of land at sheriff's sale, who, under the impression that he was liable to pay a bond, secured by mortgage on the property purchased, paid the same, and afterwards discovered that he was not bound to pay it by reason of the mortgage having previously been satisfied of record, it was held he could not recover the money back, as the holder of the bond had conscientiously received the same. In Boas *v.* Updegrove, 5 Barr 516, an execution had issued on a judgment against the former owner of the land to sell it. The terre-tenant supposing the judgment to still be a lien on the land after it was advertised for sale paid the money to the sheriff who returned the writ " money made by " the terre-tenant. Before the return day of the writ the latter ruled the money into court and proved that the judgment was no lien and that he had paid it under a mistake. It was held to be a voluntary payment which the terre-tenant could not have recovered back, and that the plaintiff in the execution was entitled to the money. It was said to be money which the creditor might conscionably receive and which he might conscionably retain. In Taylor *v.* The Board of Health, 7 Casey 73, it was held that a payment of taxes is not compulsory because made under a threat, express or implied, that the legal remedies for its collection will be resorted to. It is there said, " we state the case as one of a voluntary payment of taxes because there is no pretence that the defendant's officers did any more than demand the tax under a supposed authority of the law ; and this is no more a compulsion than when an individual demands a supposed right."

Again, in Real Estate Savings Institution *v.* Linder, 24 P. F. Smith 371, it was held that one who voluntarily pays money with knowledge or means of knowledge of the facts, and without fraud on him, cannot recover it back, because he paid it in ignorance of the law. In Dillon on Municipal Cor. § 751, the requisites to maintain an action ex contractu against a municipal corporation to recover back money paid to it for taxes are said to be three : 1. The authority to levy the tax must be wholly wanting or the tax itself wholly unauthorized, so that the tax is absolutely void. 2. The money sued for must have been actually received by the defendant corporation for its own use. 3. The payment by the plaintiff must have been made upon compulsion to prevent the immediate seizure of his goods or the arrest of the person and not voluntarily. " Unless these conditions concur, payment under protest will not give a right of recovery." No authority is found which holds

[Union Ins. Co. *v.* City of Allegheny.]

that money paid to prevent the sale of lands under a threat to sell the same on a judgment which is not a lien thereon, can be recovered back by reason thereof.

Then to refer to the facts in this case we find no allegation that the taxes were illegally laid. No averment of irregularity in making the assessment or in laying the taxes. The city had undoubted jurisdiction and power, and all the forms of the law were complied with. The only alleged wrong consists in the attempt to collect the taxes by proceedings against the land after it ceased to be liable for the payment thereof. At the time the taxes were paid each party was fully informed of all the facts bearing on the case. The plaintiff knew them then as well as now. They were all of record, and most of them in the direct line of its title. It knew when the mortgage was executed. It knew the time when it purchased the property at sheriff's sale. The claims filed showed on their face that they were for taxes laid after the execution of the mortgage, and for years prior to the sheriff's sale. The only question about which the parties could possibly differ was one of law. That was whether under the well known and undisputed facts the lien of the taxes was divested. The city proposed to test it in a regular legal form. They had been duly laid; they had never been paid to the city; the property did not sell for enough to pay them, if it had claimed and obtained the whole fund produced by the sale. They remained unsatisfied against Logan. There was nothing inequitable or unconscionable in the city's acceptance of the taxes and in retaining them.

It is said the plaintiff had not had its day in court. True, it had not. The taxes were not laid against it, nor its property. The company did not propose to attack the validity of the assessment. In several of the cases cited the party had had no day in court. No hearing or opportunity of being heard; yet he might have had it before making payment, by appropriate action. Failing to avail himself of it, he waived his rights. So here by application to the equitable powers of the court or by bill in equity execution might have been staid, and the claim removed from the record. No immediate and urgent necessity existed for the payment of the taxes to protect the property of the plaintiffs. Its goods were not about to be seized. The execution could not take from it the possession of the land; nor could a sale if made, have had such effect. It follows that all the facts in the case are clearly insufficient to enable the plaintiff to maintain this action, and the learned judge was correct in so holding.                                    Judgment affirmed.

SHARSWOOD, C. J., and GORDON and TRUNKEY, JJ., dissented.