Opinion by
Henderson, J.,
The plaintiff was executor of the will of Julian Blatt and in *363 that capacity filed an account showing a balance of $529.56 in his hands for distribution among the heirs, which account was finally confirmed June 15, 1901. A short time thereafter the accountant requested the defendant, who was a son and heir of the decedent, to meet him at the office of a justice of the peace living in the neighborhood to receive the amount due him as such heir, and on June 28, 1901, the defendant met the plaintiff in response to the latter’s notice.. The plaintiff exhibited a receipt and release which he had theretofore prepared, according to which there was due to the defendant $254.50, and on the representation of the plaintiff that that was the correct amount, the defendant signed the receipt and release and received the money. More than two years afterward the children of Kate Yunger, a daughter of the decedent, procured the appointment of an auditor to distribute the fund in the hands of the executor. According to the distribution made by the auditor the defendant was entitled to $117 from the estate. The discrepancy between the amount given to the defendant by the accountant in 1901 and that found to be due by the auditor in 1904 arose out of the fact that the decedent had a book known as a family book in which-she caused to be charged advancements made by her to her children from time to time. This book was kept by the plaintiff, a son-in-law of the decedent. Among the entries in the book, made by the plaintiff, was a charge against Kate Yunger of $225. For this amount, as was afterward alleged before the auditor, William Yunger, husband of Kate Yunger, gave Mrs. Blatt his note, and it seems to have been determined by the auditor, although the auditor’s report is not presented, that this sum of $225 was not properly chargeable against Kate Yunger, and that, therefore, her children were entitled to participate to that amount in the distribution of their grandmother’s estate. From this finding of the auditor it resulted that the defendant had received $137.40 more than he was entitled to, and the plaintiff seeks to recover this excess. - It is conceded that the plaintiff made up the statement set forth in the receipt signed by the defendant; that the defendant knew nothing about the state of the account; that he made no inquiry with reference *364 thereto and .accepted the representations of the accountant as true. There was no evidence that he had any knowledge of the contents of the family book or that he even knew of its existence. He accepted what was offered him without question. The accountant was assisted in making up the statement, according to which his distribution was made, by a friend whose services he obtained to make the calculation, and this statement was afterward submitted to the plaintiff’s counsel. They presumably were guided by information furnished by the plaintiff, but the fact that their services were had shows that the accountant was not taken by surprise. That the payment to the defendant was voluntary is not disputed, nor could it be under the evidence, and we consider it clear, in the light of the authorities in this state, that an action cannot be maintained to recover the overpayment. The mistake did not arise from any statement or representation of the defendant, nor from any artifice on his part. An implied promise to repay does not arise from the mere fact that the party has received money which he ought to repay. There must be some fraud or constraint to support such an action. Such was the statement of the law by Chief Justice Gibson in Hinkle v. Eichelberger, 2 Pa. 483: “Though the action for money had is a liberal one, and lies, it is said, wherever a party has received money which he is bound by natural justice to refund, it has never been extended to money received without unfair practice or deceit, though the receiver could not have recovered it by law.” To the same effect is Natcher v. Natcher, 47 Pa. 496, in which Judge Thompson said: “A moment’s reflection will induce the inquiry, how can money voluntarily paid be recovered back? Upon what can the implied promise to pay back be rested, against a free and voluntary parting with the money, without any reservation that it is ever to be returned? The latter excludes the former. The act overthrows all presumptions inconsistent with it, and hence the rule that money voluntarily paid, that is, paid without fraud or constraint, can never be recovered back.” Carson v. McFarland, 2 Rawle, 118, is to the same effect. Edgar v. Shields, 1 Grant, 361, was a case where the administrator of the decedent paid to the mother *365 of the deceased as his heir at law the balance in his hands after settlement of his estate. A creditor filed exceptions to the account, which exceptions were sustained, and on distribution the fund in the hands of the administrator was awarded to him. In an action brought by the administrator to recover from the mother the amount paid to her, it was held that the payment was a voluntary payment, and that although she was not entitled at law to the fund it could not be recovered from her in the absence of an express promise to pay or unfair practice or deceit in obtaining it. This case was followed by Montgomery’s Appeal, 92 Pa. 202, in which an attempt was made to recover, by set-off in another proceeding, an amount paid to the widow of the decedent, largely in excess of her distributive sharé. The Supreme Court refused to allow this to be done, holding that the payment was not only barred by the statute of limitations, but was voluntary, and that in the absence of a refunding bond or an agreement to repay the money was not recoverable. It was there said that “when an administrator pays out money, he is presumed to know the condition of the estate. The assets are in his hands, and he is familiar with their amount and value. He ought to know, and is chargeable with knowledge, of the amount of claims against the estate when he makes a payment on account of a distributive share.” These comments are applicable in the case for our determination in view of the fact that the decedent made her home with the accountant and that he was her bookkeeper and apparently familiar to a considerable degree, at least, with her business transactions. Miller v. Hulme, 126 Pa. 277, was also a case of an overpayment to a distributee. It was there decided that the overpayment to the heir was voluntary and he was not legally bound to refund. The court recognized that the distributee had received an amount in excess of that to which, in good conscience, he was entitled, and that there was perhaps a moral obligation to repay, but held that as it did not appear in the proofs that there was an agreement so to do, the action could not be maintained. It will be noted that in each of the three cases last cited the payments were to distributees. In Ferguson v. Yard, 164 Pa. 586, the *366 court said: “A voluntary payment by an administrator to a distributee cannot be recovered back in the absence of fraud or an agreement to refund in case it should prove to be an overpayment or it should be. needed to satisfy after-discovered claims against the estate.” In Steel v. Arnold, 8 W. N. C. 249, the defendant undertook to, set off an overpayment by her as executor to the plaintiffs as creditors of her husband’s estate, of whose will she was executor. This the court refused to permit on the ground that such payment was voluntary and that the creditors, supposing at the time the payment was made that they were entitled to it, were not bound to repay.
The conclusion of the learned judge of the court below is not in harmony with' the doctrine declared in the foregoing cases, but we do not find any facts in the case presented which distinguish it and bring it under the operation of a different rule. Distinctions which do not distinguish are confusing to the legal mind and tend to-relax well-established doctrines in aid of desirable judgments. The plaintiff sought the defendant and gave to him the statement in. writing as to the condition of the account and the amount due him, which the defendant acquiesced in without inquiry or criticism, and the plaintiff must bear the loss occasioned by his own mistake.
The judgment is reversed.