## McClure v. Greene County.

*Lloyd E. Pollock*, for plaintiff; *A. A. Purman*, for defendant.

SAYERS, P. J.—The case stated is very lengthy, and in order to get a brief and comprehensive view of the facts admitted and the inferences proper to be drawn therefrom it is deemed necessary to make the following general statement of the facts agreed upon.

The plaintiff, surviving executor of the will of his father, knew that his deceased father claimed title to a tract of coal in Dunkard Township, Greene County, Pa., including the forty-two acres of Pittsburgh Vein of coal described in the case stated, and that he had sold the same to one J. E. Barnes in 1900, and that Barnes and his grantees had paid the taxes on said coal, and that it had been assessed to them.

The plaintiff obtained a patent for the forty-two acres of land from the State in 1911, and evidently believed that he had by said patent acquired a paramount title to the forty-two acres of land and coal.

Relying on his belief, he claimed title to the coal lands, and in 1919 he directed the assessor of the township to assess the coal to him, and it was from that time until 1927 assessed to him as owner and he never objected to the assessment, levy or collection of the same, but voluntarily paid all taxes levied on said assessment, including county taxes for the years 1919 to 1926, inclusive. He paid the tax voluntarily, that is, without compulsion, actual, present or potential, and without duress or under threat of any legal process.

It is not admitted that he knew the tax was being paid on the same coal by Barnes and his grantees during the whole time. The plaintiff having dis-

covered in 1927 that as a matter of law he took no title to the coal by virtue of his patent, notified the county commissioners to strike the forty-two acres of coal assessed to him from the assessment rolls and demanded repayment of the sum of $429.95, being the amount of county tax paid by him for the years 1919 to 1926, inclusive. The commissioners did not accede to either of his demands. He thereupon brought this suit, claiming $385.35, the amount of tax paid by him during the six years immediately preceding the date of his demand for repayment.

No fraud or deceit was practiced by any of the taxing authorities. The land was assessed on plaintiff's demand and the tax voluntarily paid by him. The plaintiff was mistaken as to the legal effect of his grant from the State. Instead of becoming the owner of the coal land in fee, as he supposed, he took it as trustee for the rightful owners: Olewine v. Messmore, 128 Pa. 470.

There is a line of cases that support in part the principles on which plaintiff bases his claim, whereby an action for money had and received can be maintained to recover money voluntarily paid to one under a mistake of fact who, as a matter of equity and right, should not be allowed to retain the same. Durdon v. Gaskill, 2 Yeates, 268; Christman v. Siegfried, 5 W. & S. 400; Clapp v. Pinegrove Township, 138 Pa. 35; where recovery was permitted because plaintiff took no title to lands which he purchased at tax sale under a double assessment.

The plaintiff relies upon the authority of Bredin v. Cranberry Township Road Comm'rs, 87 Pa. 441, as one of the cases that supports his claim, but the suit there was to recover purchase money for lands sold at treasurer's sales, where the purchaser took no title because part of the lands were out of the county and part were sold on a double or duplicate assessment and levy, the court holding that the rule of caveat emptor did not apply to treasurer's sales and that the money was obtained by the township through assessments which its officers had no right to make. The mistake in that case was brought about by the wrongful or fraudulent act of the township officer. The mistake in fact and in law in the instant case was that of the plaintiff, who demanded that he be assessed with the coal lands.

In the case of Clapp v. Pinegrove Township, 138 Pa. 35, it was held: "When the plaintiff paid his money to the county by way of redemption and settlement of accruing taxes, he discharged no obligation and he acquired no rights. He simply paid over so much more money under the influence of the unauthorized and illegal acts of the taxing officers. Although in their hands, it was still his money. They had no claim upon it, and no right in law or morals to withhold it from him. The difficulty with the defense is that the plaintiff is not complaining of a mere irregularity or a neglect of some statutory requirement on the part of the officers against which voluntary payment might relieve, but he complains that the taxes on this tract were paid in full by the owners and that thereby the demands of the public and the power of the taxing officers were alike exhausted. This being true, the double assessment and the taxes charged under it were illegal and void. They impose no liability on the land or its owner and confer no rights on the county or the township. They had no right to take, and they have no right to hold, the money so paid."

That case differs from the instant case in this, that the tax paid by plaintiff was not paid "under the influence of the unauthorized and illegal acts of the taxing officers," who, though they might have been blamed for acceding to plaintiff's demands that he be assessed, were guilty at most of a mere irreg-

ularity, due to plaintiff's insistent demands that he be assessed and against which the plaintiff by his voluntary payment has forfeited his right to relief.

We are of the opinion that the plaintiff is not entitled to recover his voluntary payments which were due to his mistake both in fact and in law. In discussing this principle generally, the court, in Johnson v. Hernig, 53 Pa. Superior Ct. 179, 183, says: "There is the additional well-settled principle which is applicable to the case under the plaintiff's own testimony, namely, that one who voluntarily pays money with full knowledge, or means of knowledge, of all the facts, without any fraud having been practiced upon him, cannot recover it back by reason of the payment having been made in ignorance of law: Bobst v. Gring, 32 Pa. Superior Ct. 541; Bomgardner v. Blatt, 35 Pa. Superior Ct. 361. Many of the cases bearing upon the question are reviewed by Judge Henderson in the last-cited case. It is pertinent to refer particularly to this language of Justice Thompson in Natcher v. Natcher, 47 Pa. 496: 'A moment's reflection will induce the inquiry, how can money voluntarily paid be recovered back? Upon what can the implied promise to pay back be rested, against a free and voluntary parting with the money, without any reservation that it is ever to be returned? The latter excludes the former. That act overthrows all presumptions inconsistent with it, and, hence, the rule that money voluntarily paid, that is, paid without fraud or constraint, can never be recovered back.' "

It can hardly be contended here, as in the last-cited case, that payment was not that of a debt justly due the defendant. The plaintiff insisted that he be assessed and volunteered to pay what he owed the county. He was not deceived, defrauded or coerced into paying over his money. It is manifest that his conduct was not controlled by anything the county assessors or other officers said or did.

"The general rule is well settled that one who voluntarily pays money with full knowledge or means of knowledge of all the facts, without any fraud having been practiced upon him, cannot recover it back by reason of the payment having been made in ignorance of law: Natcher v. Natcher, 47 Pa. 496; Real Estate Savings Institution v. Linder, 74 Pa. 371; Finnel v. Brew, 81 Pa. 362; Gould v. McFall, 118 Pa. 455; Schoenfeld v. City of Bradford, 16 Pa. Superior Ct. 165:" Bobst v. Gring, 32 Pa. Superior Ct. 541, 543.

"To entitle a recovery back in such a case there must be compulsion, actual, present and potential, in inducing the payment by force of process available for instant seizure of person or property, when the party so paying it must give notice of the illegality of the demand and of his involuntary payment. The element of coercion being essential, a mere protest or notice will not change the character of the payment or confer of itself a right to recovery: Harvey v. Girard National Bank, supra. The threat of legal process is not such duress, and it has been held that payment of taxes imposed under an act of assembly which was afterwards held to be unconstitutional, was not compulsory because made under a threat, express or implied: Taylor v. Board of Health, 31 Pa. 73:" Schoenfeld v. Bradford, 16 Pa. Superior Ct. 165, 169.

Taxes voluntarily paid cannot be recovered where the taxpayer claims their return because he was under no obligation to pay and the taxing authorities had no right to receive the payments; especially is this true where the assessment and payment were due to a mistake of the taxpayer as to the facts and the law, and not to any mistake, fraud or coercion of the tax officers: McCrickart v. City of Pittsburgh, 88 Pa. 133, 135; Union Ins. Co. v. Allegheny, 101 Pa. 250, 255; Shenango Furnace Co. v. Fairfield Township, 229 Pa. 357, 368, 369.

The court is of the opinion that the plaintiff is not entitled to recover in this case, and this opinion is based on the facts set forth in the case, briefly herein recapitulated, and on the law as recited in the foregoing cases. The case of Allentown Borough v. Saeger, 20 Pa. 421, is very much in point and distinguishes between payments made to an individual and to public officers and voluntary payment or payments made under protest. For this reason, we quote the brief opinion in that case in full:

"Part of the taxes charged against Saeger was legal and part illegal, and he paid the whole on demand and now seeks to recover back the part that was illegally assessed. It cannot be allowed. The case is very different from that of payment to an individual by mistake. It was submission to legitimate authority which was *prima facie* right in its exercise. The taxing officers performed their duty as well as they knew how, and the tax was submitted to by one who was interested in the purposes for which it was raised, though it might have been resisted in legal form. This was an assent to pay more in support of the government of the town than the town had a right to demand, and the law does not imply the duty of refunding. If it had been paid under protest, that is, with notice that he would claim it back, this would repel the implication of an assent and give rise to the right of reclamation.

"In another aspect, it is unlike to a payment to an individual. It is a contribution to a common fund, in the benefits of which he, as a citizen or property-holder, participates. It is intended for immediate expenditure for the common good, and it would be unjust to require its repayment after it has been thus, in whole or in part, properly expended, which would often be the case if suit could be brought for its recovery without notice having been given at the time of payment; and there would be no bar against its insidious spring but the statute of limitations. On these principles the defendant below is entitled to the judgment."

### Order and judgment.

The court being of the opinion that under the foregoing statement of facts the plaintiff is not entitled to recover, judgment is hereby directed to be entered in favor of the County of Greene, defendant, with costs of suit.

From S. M. Williamson, Waynesburg, Pa.