# E. E. CLAPP v. TOWNSHIP OF PINEGROVE.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 9, 1890—Decided November 3, 1890.
[To be reported.]

1. The exception in § 1, act of April 21, 1856, P. L. 477, providing that the rule, caveat emptor, shall not apply to tax-sales in cases of double

Statement of Facts.

assessment, or where the taxes on which the sale is made have been previously paid, or where the lands do not lie in the county, was perhaps unnecessary; the purchaser, in such cases, might recover back his money independent of it: Per Mr. Justice WILLIAMS.

2. When land, which has been doubly assessed, and the taxes thereon regularly paid upon a proper assessment in the name of the owners, is sold by the county treasurer for county and township taxes levied upon another and erroneous assessment, such sale is void, and the purchaser may recover from the township so much of the money paid by him as was collected for and received by it.

3. The statute of limitations runs against such right of action from the time the money was paid, though the purchaser was then ignorant of the facts; and an offer to prove that the township assessors and the county commissioners " were notified that the assessment was erroneous" before the sale, is insufficient to show such fraud or concealment of facts as will toll the statute.

4. The same principles apply to a payment by such a purchaser to the county treasurer, in redemption of the land from a subsequent sale upon a like erroneous assessment; and such a payment, in ignorance of the facts, may be recovered back by actions against the county and township, although made, by permission of the county commissioners, after the statutory period for redemption had expired.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 72 October Term 1890, Sup. Ct.; court below, No. 15 November Term 1889, C. P.

On September 3, 1889, E. E. Clapp brought assumpsit against the township of Pinegrove, to recover back certain moneys alleged to have been paid by the plaintiff for the use of the defendant township. The defendant's pleas were non-assumpsit, and non-assumpsit infra sex annos.

At the trial on March 10, 1890, the following facts were shown: In the year 1872, 290 acres of tract No. 2632, in Pinegrove township, Venango county, appeared in the tax lists as unseated land, being assessed as such in the name of John B. Carson & Co.; and upon such assessment county and township taxes were levied. Similar assessments and levies were made for the years 1873 to 1884 inclusive.

On February 26, 1877, the county treasurer made sale of 200 acres of tract No. 2632, for the taxes of 1872 so levied, and on April 25, 1877, again sold the same 200 acres, this time for the taxes of 1874 and 1875, also levied in the name of John B.

Carson & Co. At each of these sales the plaintiff became the purchaser.

On October 26, 1878, the taxes levied, as aforesaid, upon the assessments of 1876 and 1877, being unpaid, there was a treasurer's sale of the same 200 acres, at which the county of Venango became the purchaser. On January 14, 1884, one of the county commissioners called the attention of the plaintiff to the sale made to the county in 1878, and suggested that he redeem the land. Thereupon, the plaintiff paid into the county treasury all the taxes remaining unpaid upon the assessments aforesaid, together with interest thereon, and received a redemption deed from the county commissioners.

At the time of the redemption, the plaintiff was ignorant that there was any illegality about the tax assessments; but, in point of fact, as he learned within a year or two before this suit was brought, there was at the time of the several treasurer's sales no land liable to sale, answering to the description contained in the assessments upon which those sales were based, the taxes having been paid, during the period covered thereby, upon the whole of tract No. 2,632, in accordance with proper assessments against the respective owners thereof, and the assessments upon which said sales were based being erroneous duplicate assessments.

One McKissick, being upon the stand as a witness for the plaintiff, the plaintiff's counsel made the following offer:

We propose to prove by the witness upon the stand that the assessors of Pinegrove township, and the commissioners of Venango county, were notified that the assessment " J. B. Carson & Co." was erroneous, before the purchase by Mr. Clapp, and before the redemption by him.

Objected to, as irrelevant.

By the court: Offer overruled; exception.[3]

There was evidence on the part of the plaintiff that the township taxes, which were collected by means of the sales to the plaintiff in 1877, and also those which were included in the redemption money paid by the plaintiff in 1884, were paid over in due course by the county treasurer to the defendant township.

At the close of the testimony for the plaintiff, the defendant

Charge of Court below.

offering no testimony, the court, TAYLOR, P. J., charged the jury as follows:

The plaintiff brings this action to recover certain moneys which he alleges he has paid upon a double assessment of land in Pinegrove township, this county. It is conceded that there was a double assessment, and that Mr. Clapp, when he became the purchaser at the treasurer's sale, got nothing; that there was no such land there, and that the taxes for which the land was sold had been paid by other parties. The sale to Mr. Clapp was in 1877, and, after purchasing it at treasurer's sale, instead of its being assessed to him as it ought to have been, there was no change in the assessment, as I understand it, but it was carried out in the same way upon the assessment books, and ran along in that manner for years.

In our opinion Mr. Clapp had some duties to perform. It was the duty of the assessor to go upon the lands and try to learn if there had been any change of owner; that was his duty, and if he neglected it, then, in our opinion, [Mr. Clapp ought to have notified these parties that he had purchased that land, or had pretended to,—at least, that he claimed there was a double assessment; given some kind of notice. He did not do so, and the suit not having been brought to recover the money back for some eleven years after this money had gone into the township treasury, and been expended for the benefit of the township, we think that the statute of limitations would run, in that case, from the time that the money was paid by Mr. Clapp.] [1] More than six years having elapsed from that time, and the money having gone into the public treasury and been expended (it is presumed that public officers do their duty, and, if they did, the money has been expended for the use of the township), we think that the statute would bar his right of action so far as that claim is concerned.

Then [there is another claim of double assessment. Mr. Clapp afterwards neglected to pay the taxes, and the commissioners, under our act of assembly, were bound, if no one else bid in the unseated lands at the treasurer's sale, to bid them in for the county; and on October 26, 1878, the commissioners bid in this land. Then the owner, if there was any owner, had five years in which to redeem it under the statutes. If the five years expired and it was not redeemed, that vested the title

absolutely, whatever title there was, in the county; that is, there was no right of redemption in Mr. Clapp. After this right of redemption had expired, by reason of the statute, Mr. Clapp, then acting, as he says, upon the suggestion of Mr. Eakin, one of the commissioners, that he had better redeem that land, paid this other balance here claimed to redeem the land. So far as that part of his claim is concerned, that, we think, was a purely voluntary payment by Mr. Clapp. He was under no obligation to pay that money to the county or to any one else. He was a pure volunteer; and the fact that one of the commissioners advised him to do it, has nothing to do with the case at all. A man has no right to act on the advice of one of the commissioners, or all, unless he wishes, and if he does so, he takes all the chances. At this time Mr. Clapp dealt with the county as an individual, and there was no process of law; no execution or warrant, in the hands of the collector and a threat that he would sell the land. Such a state of facts would relieve the payment from being a voluntary one, that it was done under duress; but here there was nothing of that kind. It was purely and simply a matter of business with Mr. Clapp and the commissioners, and the payment in that instance was a voluntary one, and he could not recover it back. Under these instructions, if you believe the testimony here, in our opinion the plaintiff has no right to recover.] [2]

—A verdict having been returned for the defendant, and judgment entered thereon, the plaintiff took this appeal, assigning for error:

1, 2. The parts of the charge embraced in [ ] [1] [2]

3. The refusal of plaintiff's offer.[3]

*Mr. C. Heydrick* (with him *Mr. Carl I. Heydrick*), for the appellant:

1. In Bredin v. Cranberry Tp., 87 Pa. 441, this court held that a purchaser at treasurer's sale of lands, doubly assessed, may recover from the township the township taxes paid by him upon such sale. The underlying principle of that decision is equally applicable to the moneys paid by this plaintiff after his purchase at treasurer's sale, by way of redemption from the subsequent sale to the county. He had a right to redeem after the expiration of five years, with the consent of the commissioners:

Arguments.

Philadelphia v. Miller, 49 Pa. 440. The redemption money paid by him, then, was money paid upon false representations, made and persisted in by the public officers, inducing him to believe that he had acquired title by the treasurer's sale to him, and that the taxes thereafter assessed were a legal charge upon his property. What he paid was not money given to the township; nor money paid in discharge of a lawful tax upon somebody else's property, which the township could with a good conscience receive and retain.

2. The township has in its treasury money belonging to the plaintiff which he has a right to recover in assumpsit against it: Bredin v. Cranberry Tp., supra; Thomas v. Brady, 10 Pa. 164; Miles v. Stevens, 3 Pa. 37; Johnson's App., 114 Pa. 132; Babcock v. Day, 104 Pa. 4; Moses v. Macferlan, 2 Burr. 1005; Lee v. Gibbons, 14 S. & R. 105; Smethurst v. Woolston, 5 W. & S. 109; American L. Ins. Co. v. McAden, 109 Pa. 399; Goettel v. Sage, 117 Pa. 298; Miller v. Ord, 2 Binn. 382; Mussi v. Lorain, 2 Bro. 56; Tybout v. Thompson, 2 Bro. 27; Johnson v. Rutherford, 10 Pa. 455; McDonald v. Todd, 1 Gr. 17; Gaines v. Miller, 111 U. S. 395; Pickard v. Bankes, 13 East 20. When does the statute of limitations begin to run against the plaintiff's claim for moneys paid on his supposed purchase in 1877? It is well settled that in case of fraud, the statute does not begin to run until the discovery of the fraud. And it is not necessary, to taint an act with fraud, that a wrong should have been originally intended: Parke v. Chadwick, 8 W. & S. 98; Rearich v. Swinehart, 11 Pa. 240.

3. This branch of the case, however, does not rest alone upon the doctrine of fraud by relation. Our rejected offer to show notice to the township and county officers of the illegal character of the assessment, which should have been received, presents a case of fraud pure and simple, and the plaintiff was in ignorance thereof until less than two years before suit brought. But it is unnecessary that we establish positive fraud. The case of Bredin v. Cranberry Tp., supra, necessarily assumes that a purchaser has a right to rely upon the assessment, as a representation that there is such land as is therein described, and that it is not otherwise assessed. That representation was continued in this case until a time within six years before the bringing of the suit, and as the plaintiff was thus misled and

deceived, the township and county officers knowing and concealing from him the fact that there was a double assessment, and thereby inducing him to delay his action, they cannot set up the statute against him: Morgan v. Tener, 83 Pa. 305; Wickersham v. Lee, 83 Pa. 416; Hughes v. Bank, 110 Pa. 428.

*Mr. George S. Criswell* (with him *Mr. J. W. Lee* and *Mr. F. W. Hastings*), for the appellee:

1. As to the money paid by the plaintiff upon his purchase in 1877, the action is manifestly barred by the statute of limitations. There is no proof of fraud to toll the statute, but there is proof of the most extraordinary negligence on the plaintiff's part. In cases of fraud, the statute begins to run from the time when the fraud is discovered, or the time when by reasonable diligence it might have been discovered: Sankey v. McElevey, 104 Pa. 265. In this case, after purchasing in 1877, the plaintiff abandoned this purchase for more than six years. If he had made any inquiry after his purchase, as to the location of the land, he would have discovered the facts. Moreover, he was put on notice by the fact that taxes had been paid by someone else on 90 of the 290 acres embraced in the assessment. Nor is there anything to sustain the allegation that he was misled by the subsequent assessments. There is no proof that he saw them, or that his purchase ever came to his mind from 1877 until 1884. The case of Bredin v. Cranberry Tp., 87 Pa. 441, however, does not sustain the position that the continuation of the assessments amounted to a fraudulent representation of facts. The plaintiff's offer, referred to in the third assignment was improper, and is supported by no citation of authority.

2. The conveyance made to the plaintiff by the commissioners in 1884, although in form a grant, is in effect only a redemption: Jenks v. Wright, 61 Pa. 410. An owner may redeem after five years, with the consent of the commissioners, but only by their permission: Kunes v. McCloskey, 115 Pa. 466. And the redemption by the plaintiff was voluntary. It was not a purchase of land, and the act of April 21, 1856, P. L. 477, relative to treasurer's sales, has no application. It was a payment of taxes merely, and the rules governing such payments control it. It was a voluntary payment of taxes which were not a personal charge upon the plaintiff, and which were

received with a good conscience, under a claim of right, and expended for public purposes; and money so paid cannot be recovered back: Cooley on Taxation, 565; 2 Dillon on Mun. Corp., § 940; Union Ins. Co. v. Allegheny, 101 Pa. 256; Peebles v. Pittsburgh, 101 Pa. 304; McCrickart v. Pittsburgh, 88 Pa. 133; Taylor v. Board of Health, 31 Pa. 73; Mays v. Cincinnati, 1 Ohio 268. The rule that a voluntary payment under a claim of right precludes recovery, applies generally: Harvey v. Girard N. Bank, 119 Pa. 212.

OPINION, MR. JUSTICE WILLIAMS:

Prior to the act of 1856, the rule, caveat emptor, was held applicable to the sale of lands for taxes in the same manner as to judicial sales. That act provided that the rule should not apply to tax-sales in certain cases, viz., where the land sold did not lie in the county where the taxes had been actually paid, and where the sale had been made upon a double assessment.

Perhaps the statute was unnecessary. If a sheriff who held no writ against the owner of property, or a writ that had been already satisfied by the payment of the debt, interest, and costs in full, should nevertheless proceed to sell the property, his act would be unauthorized and illegal, and, if no other question was involved, would not affect the title of the owner, or confer any right on the purchaser. For the same reason, if the treasurer, who is authorized to collect unpaid taxes by the sale of the land against which they are charged, should receive full payment of the taxes and costs, the lien of the taxes would be discharged, and the power of the officer to make the sale divested: Laird v. Hiester, 24 Pa. 452; Montgomery v. Meredith, 17 Pa. 42; Breisch v. Coxe, 81 Pa. 336. If, notwithstanding such payment and its legal consequences, the treasurer should proceed to sell, the rule, caveat emptor, ought not to apply, for the reason that the treasurer, being without the power to sell, can make no sale, and the attempt to do so can impose no liability and confer no rights on any one. If the authority to make the sale exists, the rule applies, and the regularity of the preliminary proceedings, the extent of the tract, and the value of the land, are at the risk of the purchaser. Whether he gets his money's worth or not, he cannot be heard

to complain. If, however, there is no such tract as that offer-
ed for sale, or if the taxes have been previously paid, the
officer has nothing to sell, and no sale can be made. The
conditions on which the law clothes him with the power to sell
do not exist. The attempt to make a sale under such circum-
stances is an unauthorized assumption of power which does
not exist, and one who has become a purchaser at such a sale
has a right to have his money returned to him. This was held
in the recent case of Bredin v. Cranberry Tp., 87 Pa. 441,
which was an action by a purchaser at such a sale to recover
so much of his bid as was in the hands of the township.

The plaintiff, in the case now before us, became a purchaser
at the tax-sales in 1877 of a tract of land in Pinegrove town-
ship, Venango county, assessed as two hundred ninety acres
in tract No. 2632, in the name of J. B. Carson & Co., owners.
In 1878, the same tract was struck down to the county. They
held it until 1884, when they called the attention of the plaint-
iff to the fact that his time to redeem had expired, and offered
to permit him to redeem the tract. This he did. He after-
wards discovered on investigation that there was a double as-
sessment of this tract, and that the taxes upon it had been
regularly paid by the owners. This suit was then brought to
recover so much of the whole amount paid as was in the hands
of the township. As to that part of the claim which is for
money paid at the sale of 1877, the defendant pleads the stat-
ute of limitations; and to that part of it which is for money
paid by way of redemption in 1884, it relies on the fact that
the money was not paid under duress, but voluntarily, and
alleges that the plaintiff is bound thereby. This suit was not
brought until 1889.

There is no evidence showing an intent on the part of the
officers to defraud, or to conceal the real facts in the case, such
as is necessary to prevent the running of the statute from the
date of the payment. The statute of limitations is therefore
well pleaded as to the money paid in 1877. That paid in 1884
is not affected by the statute and we are to inquire into the
right of the plaintiff to recover. In a certain sense the money
was voluntarily paid, for the plaintiff was under no legal form
of duress at the time, but the same thing may be said of the
payment of his bid in 1877. The taxes were not assessed

Opinion of the Court.

against him.   He had no interest in the tract, but volunteered to bid upon it, became the purchaser, and paid his bid.   Nevertheless, it is conceded that but for the statute of limitations he could recover the amount so paid.   Why?   Because the taxes on this tract had been paid, and it was subject to no lien or burden that could authorize a sale.   The second or double assessment was unauthorized.   The taxes assessed under it were illegal, and their non-payment gave the treasurer no authority to make the sale.   The purchaser who paid his money at such sale got nothing for it.   The whole transaction was a mistake, —was illegal and void.   This is the reason on which the recovery in Bredin v. Cranberry Tp. must rest, and on which this plaintiff could have recovered the amount of his bid if the statute had not run.

But the state of things existing in 1877 continued down to 1884.   The assessment being unauthorized under which the sale to the county was made, that sale conferred no title. There was nothing to be paid to the county by way of redemption, therefore, and the accruing taxes under the same illegal assessment were not a charge on the land.   When the plaintiff paid his money to the county by way of redemption and settlement of accruing taxes, he discharged no obligation, and he acquired no rights.   He simply paid over so much more money under the influence of the unauthorized and illegal acts of the taxing officers.   Although in their hands, it was still his money. They had no claim upon it, and no right in law or morals to withhold it from him.   The difficulty with the defence is that the plaintiff is not complaining of a mere irregularity, or a neglect of some statutory requirement on the part of the officers against which voluntary payment might relieve, but he complains that the taxes on this tract were paid in full by the owners, and that thereby the demands of the public, and the power of the taxing officers, were alike exhausted.   This being true, the double assessment and the taxes charged under it were illegal and void.   They impose no liability on the land or its owner, and confer no rights on the county or the township.   They had no right to take, and they have no right to hold the money so paid.

The judgment is therefore reversed, and a venire facias de novo awarded.