John A. Murtland, Surviving Executor of J. M. Murtland, deceased, Appellant, *v.* the City of Pittsburg.

*Municipalities—Municipal lien—Payment to city.*

Where an owner of land against which benefits have been assessed appeals from the assessment and subsequently, without any purpose of abandoning the appeal, but in order to give a clear title to purchasers, deposits with the city attorney the amount of the liens, the city attorney to hold the money until the appeal shall be decided, and to return it if the appeal be successful, such deposit is not a payment of the lien, but the city, upon the appeal being decided in favor of the owner, will be required to repay the money to the land owner.

Argued Nov. 3, 1898. Appeal, No. 90, Oct. T., 1898, by plaintiff, from order of C. P. No. 2, Allegheny Co., July T., 1896, sustaining exceptions to report of referee. Before GREEN, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Exceptions to report of referee, William R. Blair, Esq.

The report was as follows:

1. On May 9, 1890, the city of Pittsburg filed two municipal liens at Nos. 60 and 101 of July term, 1890, municipal lien docket, in the sums of $773.44 and $504.34 respectively, against certain land in the twenty-first ward of the city of Pittsburg, belonging to the heirs of John M. Murtland, deceased, the amounts fixed by viewers as alleged benefits to said land resulting from the opening of Grazier street, which is now called Hamilton avenue, in the city of Pittsburg.

2. From the report of viewers aforesaid the Murtland heirs, on November 20, 1889, at No. 647 of December term, 1889, appealed, and on April 8, 1891, their appeal was sustained, the report of viewers was reversed and set aside by the court, and it was ordered that all said proceedings, so far as they affect the property of appellants, be quashed, and the liens aforesaid be stricken from the record.

3. In the summer of 1890 the Murtland heirs entered into a contract for the sale of the land aforesaid, clear of all incumbrances at a certain price. At this time Mary B. Murtland, the widow, and John A. Murtland, the plaintiff in this action, a son of John M. Murtland, deceased, were the administrators of the estate of said decedent, and said Mary B. Murtland died before the institution of this action.

4. After an examination of the title to the land aforesaid, the purchasers aforesaid refused to take it, unless the liens were removed, and thereupon Mr. C. C. Dickey, who was counsel for the heirs as well as for the administrators of the estate of John M. Murtland, deceased, called at the office of the city attorney for the purpose of endeavoring to make some arrangement for getting rid of the said liens against said land and securing the city in case the land should be held liable for said assessments.

Mr. Dickey there met W. H. House, at that time the clerk of the city attorney, and the person who, for the city attorney, attended to all matters relating to the damages and assessments for opening streets, stated to him the purpose of his visit, and proposed the following arrangement be made in regard to said liens, to wit: That said liens be marked satisfied of record by the city attorney, the amount of the liens and costs being paid into the city attorney's hands to be held by him upon con-

dition that if the appeal aforesaid was sustained, the money should be refunded, or if sustained in part, a ratable part should be refunded. Mr. House, after consulting with W. C. Moreland, the city attorney, in regard to the proposal of Mr. Dickey, reported to Mr. Dickey that the arrangement proposed by him could be made, and thereupon Mr. Dickey, on behalf of the plaintiff, delivered to Mr. House, representing the city attorney, a check of Mary B. Murtland, administratrix of the estate of John M. Murtland, deceased, for the amount of said liens and costs, to wit: $1,298.78, and on the same day, September 10, 1890, the liens were marked satisfied of record, by Mr. House, representing the city attorney. Said check was subsequently deposited in Mr. Moreland's account in the Allegheny National Bank, Pittsburg, along with other funds belonging to the city derived from street improvements, and was duly paid by the bank on which it was drawn.

5. It further appears that at the time of this transaction, and for years previously, it was the practice for the city attorney in cases of opening the streets, to collect and receive the money assessed as benefits, disburse the same to those entitled to damages without the same passing into the hands of the city treasurer. In this case the amount received from parties assessed, including the sum received from plaintiff was $4,798.97, and the amount paid out $15,935.76, the difference $11,141.79 being paid by the city of Pittsburg. The referee finds therefore that the plaintiff's money was actually received and used by the city in its own exoneration of its liability to those entitled to damages.

6. Shortly after plaintiff's appeal was sustained, demand was made upon the city attorney for the return of plaintiff's money, but the same has not been returned.

### CONCLUSIONS OF LAW.

While at first the referee was of opinion that this case came within the ruling of Peebles v. The City of Pittsburg, 101 Pa. 304, and other cases of the same class holding that a voluntary payment may not be recovered back, as urged by the counsel for the city, subsequent reflection has led him to the conclusion that this case must be decided upon other principles. The referee is of opinion that the transaction between the counsel for

the parties whereby the money of the plaintiffs came into the possession of the then city attorney cannot, properly speaking, be regarded as a payment at all. A payment, in a sense within the above rule, is anything which is given to and accepted by a person as a discharge and satisfaction of an obligation. The idea of discharging or satisfying a demand claimed against the party paying is an essential element to a payment within the above rule. But in this case all idea of discharging the obligation, evidenced by the liens, is wanting, both parties to the transaction, to wit: the counsel acting as the agents of the plaintiff and of the city agree that the transaction was in effect a mere substitution of the money for the liens. There can be no doubt that an agreement such as was made in this case, if made between private individuals, parties to a dispute at law, would be recognized and enforced as a trust upon the fund deposited. While it may be that the duty of the city attorney was limited to the collection of these liens as the learned counsel for the city contends, and that the agreement made with the plaintiff was outside his powers as an officer of the city, yet it seems to the referee, and he so holds, that if the city repudiates the arrangement it must repudiate in toto, and that it may not affirm in part and repudiate in part, it may not take the money and repudiate the conditions under which it was given: Hughes v. Bank, 110 Pa. 428.

It is plain beyond question that the city has obtained and used the money of the plaintiff to which it had and, as the land against which the lien was filed did not abut on the improvement, could have no lawful right, in direct violation of the agreement in which it was deposited in its own officer's hands.

It is proved, and if not admitted, it is not disputed, that the land of the plaintiff, beclouded by these liens, did not abut on the line of Hamilton avenue at all, but was separated therefrom by a block of intervening property. It is plain, therefore, not only was it not subject to lien on account of want of constitutional legislation so subjecting it, but that by no legislation could it have been made subject to these liens: In re Morewood Avenue, 159 Pa. 20. This being so, this case, in the opinion of the referee, falls within the reasoning of Clapp v. Pinegrove Township, 138 Pa. 35, in which the distinction is made between payments of claims invalid by reason of some irregu-

larity or neglect of statutory requirement, and of claims utterly without lawful foundation, and forming no consideration for the payment. Besides, the plaintiff in this case had appealed, and was duly using all the means of redress the law allowed, yet without relief, as the liens still on record were depriving him of lawful use of his property. This case is not the case of a practical acquiescence by paying a claim with a mental reservation expressed in a protest, but without practical resistance; but is a case of practical resistance with a collateral arrangement substituting a claim upon a fund for a lien upon land; an arrangement voidable, it may be, by reason of infirmity of power in the officer making it, but not itself unreasonable or unlawful, nor in any just sense injurious to the city.

While it may be true that it is to the public interest that money voluntarily paid to the city should be freely disposable in its hands for public purposes, yet the referee cannot agree that this rule goes so far as to permit a city to take advantage of its officials' acts so far as they are beneficial or profitable, and repudiate them so far as inconvenient to it; with the result of taking the money of its citizens to which it is not, and in this case cannot be, lawfully entitled in violation of the conditions upon which the money came within its grasp.

The referee is also of opinion that while under the practice existing in this city at that time as to receipts and disbursements for street improvements, it was undoubtedly supposed by the plaintiff's counsel that the money would be held and returned by the city attorney, there is nothing in the evidence in this case to sustain a personal liability on the part of that officer. The evidence discloses no personal assumption on his part or misrepresentation of his authority in the premises whatever; one of which must be shown to render a public officer liable personally for acts beyond his authority, and unless this action can be maintained the plaintiff is without remedy.

The referee is of opinion that the plaintiff is entitled to recover, and it is now ordered that judgment be entered in favor of the plaintiff and against defendant in the sum of $1,298.78, with interest from April 8, 1891, to wit: $1,967.65, with costs of suit.

The court, in an opinion by WHITE, P. J., sustained excep tions to the report of the referee.

*Errors assigned* were in sustaining exceptions to referee's report.

*W. K. Shiras*, with him *George Shiras, 3d*, for appellant.— The plaintiff had already paid an assessment for the opening of Grazier street in front of his land. The present assessment was a second one. The money of the plaintiffs was received and used by the city to pay damages on this street, for which the city was liable. The city would never have received the money but for the agreement of its attorney.

The doctrine of estoppel in pais has been held by this Court to be applicable to municipal corporations as well as to private corporations and citizens, but the public will only be estopped, or not, as justice and right may require: Martel v. East St. Louis, 94 Ill. 67; Chicago, Rock Island & Pacific R. R. v. Joliet, 79 Ill. 39; Logan County v. City of Lincoln, 81 Ill. 156; Pendleton County v. Amy, 13 Wallace, 297; Chambers's App., 159 Pa. 20.

The case now before this Court is on all fours with Clapp v. Pinegrove Twp., 138 Pa. 35, where one who had paid to a township treasurer taxes which were illegally assessed was permitted to recover them back, because the assessment paid was, as in this case, a double assessment; the taxes had already been assessed and paid, and this Court held that there was no consideration for the second assessment and it created no lien.

The Supreme Court of Illinois, in Bradford v. City of Chicago, 25 Ill. 349, decided that, where there was a total failure of consideration, money voluntarily paid to a municipal corporation can be recovered back.

We say with great confidence that the city attorney had implied authority by virtue of his office as attorney of record, and as disbursing officer of these very moneys, to make the agreement which has been proved: Town of Alton v. Town of Gilmanton, 2 N. H. 520; Coxe v. Nicholls, 2 Yeates, 546; Wilson v. Young, 9 Pa. 101; Bingham v. Guthrie, 19 Pa. 418; Babb v. Stromberg, 14 Pa. 397; Lynch v. Com., 16 S. & R. 368; Reamer's App., 18 Pa. 510; Thomas v. Jarden, 57 Pa. 331.

*J. H. Beal*, with him *Clarence Burleigh*, for appellee.—It is conceded that the money was paid voluntarily with full knowl-

edge of all the facts, and without mistake. The case, therefore, is, we think, on all fours with Peebles v. Pittsburg, 101 Pa. 304.

The city attorney clearly had no authority to make any such bargain : Dillon on Municipal Corp. sec. 531 ; 19 Am. & Eng. Ency. of Law, 507.

OPINION BY MR. JUSTICE GREEN, January 3, 1899 :

We are quite clearly of opinion that the learned referee in this case placed his decision upon the true ground. There was in fact no payment of the liens or of the debt for which they were entered, nor was any such payment intended by the parties to the transaction. An appeal had been already taken from the assessment of benefits, and the purpose of the appeal was to contest the right of the city to recover any part of the assessments. No purpose to abandon the appeal was disclosed, but another and entirely different purpose was distinctly expressed, and beyond all question it was the real and operative occasion of the arrangement that was made. The Murtland heirs had made a contract for the sale of the land against which these liens were entered. The purchasers, when they discovered that the liens had been filed, refused to take the property unless the liens were removed, and thereupon, for that reason, and for that reason only, the counsel for the heirs called upon the city attorney to see what could be done so as to protect the purchasers and save the sale. This was an entirely legitimate and proper thing to do, and a plan was devised by which the object could be accomplished. The purchasers of course desired to be relieved of the liens, and to accomplish this object it was necessary that they should be discharged. But the city could not be expected to do this unless they could be assured of their money if the liens were sustained. And at the same time the Murtland heirs desired to preserve their contest of the city's right to recover. To subserve these various purposes it was agreed that the heirs should deposit with the city attorney, acting on behalf of the city, money enough to pay the liens if the city's right to recover should be sustained, and the city by her attorney agreed to hold the money until the right of the city to recover should be determined and, if the decision should be adverse to the city, to return the money to the heirs. In the

mean time the liens were to be, and actually were, discharged of record. As we have said before, this was a perfectly fair and legitimate transaction, which was actually carried out in entire good faith. All of these facts were found by the referee upon ample testimony as to which there was in reality no dispute.

It will be seen at once that there was no payment of the liens made or intended to be made, and all the authorities cited in reference to the effect of voluntary payments are entirely inapplicable and need not be considered. The authority of the city attorney to receive the money and hold it and return it, acting on behalf of the city, cannot be questioned. A long course of dealing by which the moneys due the city by way of assessment for benefits, and paid out by him in discharge of awards for damages, was fully established, and the referee found as a fact in this case that the money was actually received by the city and used by it in its own exoneration of its liability to those entitled to damages. These facts being established, it necessarily follows, as is shown very clearly in the report of the referee, that the city could not hold the money and repudiate the conditions under which it was received. The case of Hughes v. Bank, 110 Pa. 428, cited by the referee, fully sustains this doctrine. And on the city's right to recover on the liens the case, In re Morewood Ave., 159 Pa. 20, also cited by the referee, is absolutely conclusive against the right, and as a necessary consequence she had no right whatever to retain the money or even to have received it. In these circumstances the decision of this Court in Clapp v. Pinegrove Twp., 138 Pa. 35, became directly applicable, to wit: that money received by a municipality which it had no right to receive could not be retained, and must be restored to the lawful owner, although he had himself paid it in. We think the case was correctly decided by the referee for reasons which are clearly and forcibly expressed in his report. It is not necessary to further enlarge upon them. We are not convinced by the opinion of the learned court below that the exceptions to the report should be sustained, but think they should have been dismissed and the report confirmed. The assignments of error are all sustained.

The judgment of the court below is reversed and judgment is now entered in favor of the plaintiff and against the defendant for $1,298.78, with interest from April 8, 1891, with costs of suit.