## Woods v. Somerset County Tax Claim Bureau

*Jon A. Barkman,* for plaintiff.
*Frank A. Orban, Jr.,* for defendants Arrow and Gahagen.

COFFROTH, *P. J.,* February 14, 1984—Defendants Gahagen and Arrow Coal Corporation have filed preliminary objections to plaintiff's complaint for restitution, which raise the following issues:

1. Lack of jurisdiction over said defendants for want of proper service; and

2. Misjoinder of causes of action in assumpsit, trespass and equity; and

3. The complaint states no cause of action (demurrer) for want of allegations that defendants misled or induced plaintiff to make the expenditure whose restitution is sought; and

4. Expiration of the statute of limitations.

Plaintiff has filed preliminary objections to defendants' preliminary objections, and at the same time filed answers to defendants' preliminary objections. Plaintiff's preliminary objections complain that defendant's objections are insufficiently specific, particularly the demurrer, as required by the rules. See: Civil Rule 1028(a); Spickler v. Lombardo, 32 Somerset L. J. 16, 18 (1976). But, as summarized above, defendants' preliminary objections are sufficiently specific, so plaintiff's objections to the preliminary objections lack merit.

We consider the objections in reverse order as above listed:

Statute of Limitations:

The preliminary objections reach only Count II of the complaint which is in assumpsit for the recovery of money had and received. The statute of limitations is a waivable statute and must therefore be raised in new matter under Civil Rule 1030, not by preliminary objections. See Spickler v. Lombardo, supra, 16, and Clapp v. Pinegrove Township, 138 Pa. 35 (1890).[1]

---

1. By recent amendment to Civil Rule 1030, effective July 1, 1984, all statutes of limitation must be raised in new

Demurrer:

Count II of the complaint, to which the present preliminary objections are made, seeks recovery from the objecting defendants of the sum of $5,252.95 which plaintiff paid to Somerset County Tax Bureau (defendant in Count I) as the purchase money for a tract of land situate in Shade Township purchased from the bureau at a sale for delinquent taxes. The money was paid out by the bureau to the taxing bodies and the balance to the individual defendant for defendant corporation as landowner. Count II avers that the land so assessed and sold "does not exist", that the unpaid taxes for which it was sold "represent a double assessment", and that said defendants are thereby "unjustly enriched" by reason of the purchase money paid to them "which should be paid to the plaintiff". The objections are based on the proposition that plaintiff as purchaser in the sale was governed by the rule of caveat emptor (let the buyer beware) and was a pure volunteer in the purchase, was not misled or induced in any way by defendants to make the purchase and is not therefore entitled to restitution under Pennsylvania law.

We conclude that plaintiff's complaint states a cause of action for restitution of his purchase money paid at the tax sale, to the extent it benefited the objecting defendants, on the basis of the following propositions:

matter. See 15 Pa. Bulletin, 12-31-83 page 4000. This change is in keeping with our criticism of the present rule in Spickler v. Lombardo, supra, 41-44 (Appendix, part C, paragraphs 4 and 5 et seq). In Clapp v. Pinegrove Township, 38 Pa. 35 (1890) it is held that the statute of limitations on a claim for restitution by a tax sale purchaser begins to run from the time the money was paid, even though the purchaser was then ignorant of the facts.

1. Although a sale for delinquent taxes is not held pursuant to court order, but to statutory direction and authority, such a sale is under Pennsylvania law a "judicial sale" because its final efficacy depends on judicial confirmation under Real Estate Tax Sale Law §607, 72 P.S. §5860.607. Pittsburgh Petition, 376 Pa. 447, 450 (1954); PLE, Taxation §396. Subsection (g) of §607 states that the title of the purchaser at a confirmed tax sale is "as valid and effective as if acquired by sheriff's deed."[2] Although §608 provides that tax deeds shall be "in fee simple for the property sold", the nature and extent of the interest sold at tax sale is defined by the assessment. See: Bannard v. New York State Natural Gas Corp., 448 Pa. 239, 293 A.2d 41 (1972); Topper Estate Tax Sale, 37 Somerset L. J. 293, 315 (1979); PLE, Taxation §§437-439.

2. At common law, the rule of caveat emptor (let the buyer beware) applies "to the sale of lands for taxes in the same manner as to judicial sales", absent contrary statute. Clapp v. Pinegrove Township, supra, 42; Lackey v. Mercer County, 9 Pa. 318, 12 Atl. 337 (1948); PLE Taxation §446; PLE, Judicial Sales §18. In such sales, the normal inference is that even if no title passes by the transaction, the purchaser takes the risk. As stated in Restatement of Restitution §24, Comment d:

"Normally, the seller . . . . warrants his title, and the purchaser has the alternative of maintaining an action for breach of contract or of getting the return of his consideration. On the other hand, the transaction may be conducted on the basis that even though no title passes by the transaction the pur-

---

2. On the difference between the title conveyed at tax sale and that conveyed at other judicial sales, see PLE, Taxation §433.

chaser is to take the risk. . . . . In judicial sales, that is, sales requiring confirmation by a court, if the purchase price is paid and the mistake is discovered before confirmation, the court has discretion to order, and normally will order, the return of the money paid, unless the purchaser has been negligent in failing to ascertain the facts because of which he seeks restitution. After confirmation no restitution will be granted."[3]

A deed made pursuant to such a sale is virtually a quitclaim deed. See CJS, Deeds §8 at note 65 citing Sabourin v. Jilek, 128 So. 2d 698 (Louisiana 1961). In such a deed, the purchaser takes the risk of the grantor's want or defect of title and is not entitled to restitution. See: Greek Catholic Congregation of Olyphant Borough v. Plummer, 338 Pa. 373, 12 A.2d 435 (1940) and 347 Pa. 351, 32 A.2d 299 (1943). In such situation, the buyer receives only what he bargained for and was entitled to expect, and there is no injustice in the grantor's retention of the benefits. Beroes v. Haberman, 40 Somerset L. J. 265 (1982); Restatement of Restitution §24 Comment c.

3. An exception to the principle of caveat emptor is recognized in cases of double assessment. One whose purchase at a tax sale is void by reason of a double assessment is entitled to restitution of the money paid therefor because the selling officer lacked jurisdiction to sell, as distinguished from a sale voided for procedural irregularity. Clapp v.

---

3. In In Re Queer Tax Sale, 27 Somerset L. J. 5 (1971), we allowed restitution where the sale was held invalid for want of adequate sale notice to the owner, on timely exceptions to the sale. Queer is cited with approval on other grounds in Glyder Realty Corp. Appeal, 75 Pa. Commw. 108, 461 A.2d 1329 (1983).

Pinegrove Township, supra; Bredin v. Road Commissioners of Cranberry Township, 87 Pa. 441 (1879); Murtland v. Pittsburgh, 189 Pa. 371, 374-375, 378 (1899); McClure v. Greene County 11 D. & C. 256 (1928). This is consistent with Restatement of Restitution §24(2) which provides as follows:

"§24 Purchase of Non-Existent Interest

"(1) Unless it is otherwise agreed, a right to restitution exists in favor of a person who, erroneously believing because of a mistake of fact that another has a right, title, or power, other than an interest in land, and induced by such mistake has paid money to the other in exchange for transfer of or promise to transfer the right or title or for the exercise of or the promise to exercise the power, if because of the non-existence of such right, title, or power, the payor fails to receive what it was agreed he should receive.

"(2) A person who accepts a conveyance of a freehold interest in land from another is not entitled to restitution of money paid the other therefor because of the fact that the other did not have the supposed right, title, or power to transfer such interest, unless

(a) the payor was the owner of the land, or

(b) the payment was induced by fraud or material misrepresentation of fact, or

(c) *The other purported to act by virtue of a power which did not exist.*"

"Caveat to Subsection (1): The Institute takes no position as to whether the rule stated in Subsection (1) does not in some cases apply to the transfer of interests in land other than a freehold interest." (Emphasis added.)[4]

---

4. Here there is no fraud. For an innocent material misrepresentation of fact to be ground for rescission, the repre-

Compare Restatement of Restitution §75(1)(a); §75 provides as follows:

"§75. Void Taxes and Assessments

"(1) Except as otherwise provided for by statute, a person who without mistake of fact pays a tax or assessment to a municipal corporation, or to a State if a suit for restitution is permitted against the State, is entitled to restitution of the amount paid if, but only if,

(a) *the statute, ordinance, or administrative order by virtue of which the tax or assessment was levied and paid was void as to the payor, and*

(b) the payor reasonably believed that if the payment was not made the means taken to enforce collection of the tax or assessment would subject him to serious risk of imprisonment or of the loss of possession of his things or of other substantial loss.

"(2) A collecting officer who has received possession of the money is under a duty of restitution until he has paid the money over to the municipal corporation or State for which he received it; if the payor did not protest the tax before such payment over, the officer is thereafter relieved from liability; if the payor protested the tax before the payment over, the collecting officer is thereafter relieved from liability only if he is required by statute to make such payment over irrespective of protest." (Emphasis added.)

Comment d to §75 makes the same distinction between voidness for want of jurisdiction and voidness for procedural irregularity, as follows:

"Comment on Subsection (1, a):

---

sentation must be express, and will not be inferred merely from the fact of contracting to sell or making a conveyance. See Restatement of Restitution §24 Comment e pages 110-111; compare Fatich v. Berkey, 30 Somerset L. J. 151(1975).

"d. Irregular proceedings. Under the rule stated in this Section, the right to restitution arises only if the statute, ordinance or administrative order by virtue of which the tax or assessment is levied, is void as to the payor; restitution is not permitted merely because the proceedings leading to the payment have been irregular. If the payment would have been due when paid but for a mere irregularity such as a failure to perform a formality, the payment cannot be recovered (see Illustrations 1 and 2)."

See also: PLE, Taxation §446, CJS, Taxation §§1000, 1003-1005. The cases cited and relied on by defense counsel Gaul v. McLaughlin, 207 Pa. Super. 434, 217 A.2d 757 (1966) and Fidei v. Underwood, 291 Pa. Super. 375, 435 A.2d 1275 (1981), both actions to quiet title brought by the tax sale purchaser against the landowner who was benefited, in which the sales were set aside for want of sale notice to the owner and the alternative claims for restitution were denied, are cases of procedural irregularity rather than want of power or jurisdiction to sell, and are not controlling in a double assessment case.[5]

---

5. In Fidei v. Underwood supra, the court cites and relies on Gaul v. McLaughlin supra, which in turn cites and relies on Lohr Estate, 132 Pa. Super. 125, 200 Atl. 135 (1938), an appeal from this court. In Lohr Estate, the court refused restitution to a tenant in common who had paid the taxes on the land in full on the shares of both his cotenant and himself, under the mistaken impression that such payment was legally necessary to prevent tax sale of the land, on the ground that the payor was a volunteer, uninfluenced by fraud, actionable mistake or coercion. Thus, the Gaul and Fidei courts treated their claimants as having the legal status of a payor of taxes, rather than as a purchaser at a judicial sale as we have done here. Restatement of Restitution §75 supra governs restitution for payment of taxes under a void assessment, whereas §24 supra governs restitution based on rescission of a void conveyance of land.

4. The foregoing principle supporting restitution to the purchaser at tax sale based on a void double assessment is reinforced by statute, §1 of the Act of 1856 PL 477, 72 P.S. §5931, which provides as follows:

"§5931.-Rule of caveat emptor to apply

"In all public sales of land hereafter made by the treasurer or commissioners of the several counties of this commonwealth, in pursuance of the laws of this commonwealth the rule of caveat emptor shall apply, except in cases of double assessment, or where the taxes on which the sale made shall have been previously paid, or where the lands do not lie within the county; and neither said treasurer nor commissioners shall be required to refund the purchase money, costs or taxes paid upon any tract or tracts of land so sold as aforesaid" (Emphasis added.)

Although the Real Estate Tax Sale Law, Act of 1947 PL 1368, 72 P.S. §§5860.101 et seq, is a comprehensive code governing the sales of land for taxes and is now in effect in this county, see Topper Estate Tax Sale, 37 Somerset L. J. 293, 300 note [2] (1979), we do not think it repealed the Act of 1856; the latter act is not listed among the statutes specifically repealed in §801 of the Tax Sale Law, 72 P.S. §5860.801, nor is it inconsistent with the Tax Sale Law which contains no provision covering the subject matter dealt with in §1 of the 1856 statute. Compare Rowe v. Clearfield County, 23 District 1039, 42 County Court 1 (1914) holding for similar reasons that the Act of 1901 P.L. 364 did not repeal the Act of 1856 and that they should be construed together. See also Clapp v. Pinegrove Township, supra, on necessity for statute.

5. As stated in Restatement of Restitution §75 (2) supra, the public officer holding the sale is under a duty of restitution only until he makes distribution of the purchase money as required by law. The money is also recoverable from any third person (such as the objecting defendants) who, as transferee of the payee, has benefited therefrom and retains the benefit, unless the third person is a bona fide purchaser for value without notice of the circumstances. Intermediate Unit 08 v. Charlesworth, 30 Somerset L. J. 53, 57 (1975); Restatement of Restitution §§13, 123, 168 and 172 et seq.[6]

For the foregoing reasons we cannot say that plaintiff has no substantive cause of action for restitution if a void double assessment is established or if the land does not exist or lie in the county. But the averment in the complaint of double assessment is conclusory only and states no fact supporting it or warranting a conclusion that the particular sale to plaintiff was void for that reason. That conclusion is not established merely by proof of double assessment of a property, because one assessment may be void and plaintiff's valid. See In Re Black Beauty Tax Sale, 31 Somerset L. J. 250 (1975), stating the rules for establishing priority. Hence, we will treat the demurrer as a motion for more specific pleading and sustain it. On the difference between the demurrer and the motion for more specific pleading,

---

6. In the instant case, defendant corporation (Arrow) was benefited to the extent of the overplus of purchase money paid to it by the bureau through defendant Gahagen, its executive officer. But it benefited from the taxes paid to taxing bodies only to the extent that such payment discharged a tax liability on corporate land; if a void double assessment is established, there was no liability for taxes and no benefit to the assessed owner. At this stage of the case, whether defendant Gahagen was benefited by the transaction is not apparent.

see Choder v. Seven Springs, 39 Somerset L. J. 62, 69 (1979).[7]

### Joinder of Causes of Action

The caption of the complaint states: "In Trespass, In Assumpsit, In Equity". The heading of Count I is: "Count I — To Set Aside Tax Sale". The heading of Count II: "Count II — In Equity". Count I is against defendant bureau only; it seeks cancellation of the recorded tax deed from the bureau to plaintiff on the basis of a void sale, and also seeks reimbursement from the bureau for moneys paid by plaintiff in the sale. The prayer for cancellation makes the action in equity appropriate for want of an adequate remedy at law; an action to quiet title is not appropriate here. Compare Fetterolf Mining Inc. et al. v. Wood et al. (No. 2), 41 Somerset L. J. 337 (1981). Count I is against the bureau only and is not at issue here on the present preliminary objections filed by the other defendants to Count II.

Although Count II is labeled as an action in equity, the prayer for relief is only for a money judgment for reimbursement, for which the remedy at law is adequate. Count II is, therefore, in reality an action in assumpsit only. Although plaintiff will have to prove a void tax sale in order to recover the money claimed in Count II, it is not necessary that plaintiff obtain record cancellation of the deed in order to recover reimbursement of the money, especially since cancellation of the record will be obtained in Count

---

7. On the duty of a municipality to make restitution to the purchaser of a tax title which is void by reason of double assessment, of the tax portion of the purchase money distributed by the bureau to the municipality, see Clapp v. Pinegrove Township, supra.

I if invalidity of the sale of established.[8] Hence, we treat Count II as an action in assumpsit instead of an action in equity and its heading and the caption of the complaint as appropriately and instantly amended. See: Jacobs v. Brooks (No. 2), 30 Somerset L. J. 130 (1973) and Pritts v. Henry, 31 Somerset L. J. 313, 313-314 (1975).

This leaves us with Count I in equity and Count II in assumpsit, an impermissible joinder. See: Commonwealth v. Kitchen Appliances Distributors Inc. (No. 1), 27 D.&C.3d 91, 95 (1981); June v. Pennsylvania National Mutual Casualty Insurance Company, 610 Civil 1981, (opinion of 6-15-82, Shaulis, J). But if we sustain this objection, plaintiff will simply be put to refiling two complaints, one for each count, then consolidating them for trial as in Fetterolf Mining Inc. v. Wood et al. (No. 2), 41 Somerset L. J. 337 (1981), a foolish circumlocution. Compare Simpson v. Palm, 35 Somerset L. J. 188 (1978). There is much convenience and economy to be gained from allowing this joinder of related claims and there is no prejudice therefrom presently apparent; defense counsel's fear that defendants will be deprived of a jury trial of count II is unfounded as explained in Fetterolf-Wood supra. So we will leave the joinder stand presently, without prejudice to a motion of severance at pretrial conference or at the call of the list (if there is no pretrial conference) if severance appears necessary or desirable at that time. We did the same in Pinto v. Dayton-Washko, et al, No. 443 Civil 1982, opinion of 4-4-83, without earth-shaking consequences. This liberal construction is authorized by Civil Rule 126 in order "to se-

8. Had Count II included also a prayer for record cancellation, it could very well stand as an action in equity to which the money claim is incidental.

cure the just, speedy and inexpensive determination of every action and proceeding."

Jurisdiction — Service of Process

Defendant Gahagen is a resident of Bedford County, Pa.; he lives there with his wife at R. D. 6, Bedford, in Bedford Township, and they winter in Florida; while in Florida their Bedford County neighbors know their where-abouts and the local post office has their forwarding address. He is an executive officer of defendant Arrow Coal Corporation whose principal office is at rear 1983 Florida Avenue, Johnstown, Cambria County, Pa.; the corporation has no connection with the State of Florida and its mailing address is P.O. Box 66, Windber, Pa. 15963. The corporation owns coal land in Shade Township, Somerset County, Pa., which is leased to and operated by K & T Coal Co.

This action was commenced by praecipe for writ of summons filed September 14, 1982; the writ of summons was served by the sheriff on defendant Tax Claim Bureau on September 16, 1982. Plaintiff had attempted service on defendant in Bedford County by deputization of the Bedford County sheriff, who returned the writ "not found" (NEI); although those documents are not docketed or filed in the prothonotary's office, copies are attached to plaintiff's answer to preliminary objections, filed March 7, 1983. On October 27, 1982, plaintiff's counsel filed a praecipe for reinstatement of the complaint; it requests delivery of the reinstated complaint to the sheriff of Somerset County for service on defendants Gahagen and Arrow at an address in Florida. On November 18, 1982, the sheriff served a copy of the reinstated writ on said defendants by certified mail at the stated address in Florida; these were received at the camping site where

Gahagen was wintering, were signed for by one Schneider, a fellow camper of Gahagen, without authority and were delivered to Gahagen by him. Defendants' preliminary objections were filed January 25, 1983, challenging (inter alia) legality of the service.

## A. Service On Individual Defendant

We conclude that service by mail on defendant Gahagen in Florida should be sustained, on the basis of the following propositions:

(1) Service on an individual defendant in an action of assumpsit is ordinarily governed by Civil Rule 1009 (b) and (e) which provide as follows:

"(b) When the defendant is an individual, the writ of summons, or the complaint if the action is commenced by complaint, may be served

(1) by handing a copy to the defendant: or

(2) by handing a copy

(i) at the residence of the defendant to an adult member of the family with which he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or

(ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or

(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof."

"(e) when an action is commenced against an individual in a county in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law, or is brought against two or more defendants under Rule 1006(c), the plaintiff shall have the right of service

in any other county by having the sheriff of the county in which the action was commenced deputize the sheriff of the other county where service may be had."

Service on defendant Gahagen under this rule at his residence in Bedford County by deputization was attempted and failed because he and his family were absent sojourning for the winter in Florida, and there was no adult person present or in charge of the residence. Nor does it appear that service could be made upon his agent or person in charge for the time being at his office or place of business; although the testimony shows that he was an executive officer of defendant corporation which has an office in Cambria County, it does not establish that service on defendant individually was possible there during the fall and winter months when he was in Florida.

(2) Service on defendant Gahagen is authorized by Civil Rule 2079(c) governing service of process outside the Commonwealth in certain actions. Rule 2079(c) provides as follows:

"(c) Outside the Commonwealth, the plaintiff shall have the right of service within ninety days after the issuance of the writ or the filing of the complaint or the reissuance or reinstatement thereof

(1) by having a competent adult serve the defendant in the manner provided by Rule 1009(b); or

(2) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction; or

(3) by registered letter sent by the plaintiff, the plaintiff's attorney or any competent adult addressed to the last known address of the defendant and requiring a receipt signed by the defendant. If the letter is returned by the post office without a re-

ceipt signed by the defendant but with notation by the postal authorities that the defendant refused to accept the letter, the plaintiff shall have the right of service by ordinary mail addressed to the defendant at the same address, with the return address of the sender appearing thereon; or

Note: Registered mail includes certified mail. See Definition Rule 76.

(4) as directed by the foreign authority in response to a letter rogatory or request; or

(5) in such manner as the court by special order shall direct."

Applicability of that rule is grounded on any of the following theories:

a. A Pennsylvania domiciliary who actually resides out of state for an extended period of time, and who cannot be served in Pennsylvania, as in the instant case, is a nonresident within the meaning of the Pennsylvania Rules of Civil Procedure governing "Individual Defendants Who are Nonresidents Or Who Conceal Their Whereabouts" (Rules 2076-2100). The following text from Goodrich Amram 2d §2077 (a):3 discussing the Nonresident Motorist Act is pertinent.

"Does the Act also apply to a nonresident who is domiciled in Pennsylvania? Assume that the defendant, originally domiciled in Pennsylvania, has left the hotel where he lived or has closed up the house in Pennsylvania where he lived and has taken up residence in another state for the purpose of attending work or school in that state. Assume further that he has no intention of making his new residence his home so that there is no doubt that he retains his Pennsylvania domicile. Under these circumstances, it is doubtful whether the Pennsylvania law authorizes substituted service upon the defendant at his former place of residence in Penn-

sylvania. Assuming, however, that such service is authorized, a question arises whether such service satisfies the requirements of due process. Unless the defendant has left a forwarding address, there is no reasonable probability that he would receive the copy of the summons sent to the hotel at which he formerly lived or sent to his closed house. In the absence of a reasonable probability that he would receive such notice, the service is invalid and any judgment entered in the action against the defendant is void.

"For either, and probably both reasons, substituted service at the Pennsylvania domicile of the nonresident might not be sustained. Such nonresident is therefore beyond the reach of Pennsylvania process unless the Non-Resident Motorist Act is construed to apply to him. To construe the statute so as to exclude him would be undesirable. Moreover, it would be anomalous to hold that a nonresident nondomiciliary is included in the statute but that a nonresident domiciliary is excluded when both are equally beyond the reach of process. It is therefore concluded that the Act also applies to any nonresident domiciliary."

(b) Although the original version of the nonresident-concealment rules applied only to actions against a "nonresident, or a resident who becomes a nonresident or who conceals his whereabouts" (Rule 2077(a) (1), adopted July 3, 1942, 345 Pa. xliv), the amendment of April 26, 1979 (Rule 2077(a) (1) and (2), 483 Pa. xxxi) has expanded applicability and now reads as follows:

"Rule 2077. Application of Rules

"(a) The rules of this chapter apply to

(1) an action against an individual who is a nonresident, or is a resident who becomes a nonresident; and

"Note: See Sections 5301 and 5322 of the Judicial Code, 42 Pa.C.S. §§5301, 5322, relating to the bases of personal jurisdiction over persons outside this Commonwealth.

(2) an action against a resident individual who obstructs or prevents service of process by concealing his whereabouts or otherwise."

Although plaintiff alleges in his answer to the preliminary objections that defendants concealed their whereabouts, that allegation has not been proved and we find against it. But, while nonresidence or concealment was essential to applicability under the original version of Rule 2077(a), the new language extending applicability to "a resident individual who obstructs or prevents service of process by concealing his whereabouts, or *otherwise*" (Emphasis added) is broad enough to cover defendant Gahagen under the circumstances of this case. Hence service by registered or certified letter to defendant Gahagen in Florida under Rule 2079 (c) (3) supra is valid. Strictly speaking, the service in this case does not comply with that rule because the mail receipt is not signed by defendant. But Judicial Code §5323, 42 Pa.C.S. provides a less restrictive alternative mode of proof of service by registered or certified mail on persons outside the Commonwealth. Section 5323(a) provides as follows:

"§5323. Service of process on persons outside this Commonwealth

"(a) Manner of service.—When the law of this Commonwealth authorizes service to process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made:

(1) By personal delivery in the manner prescribed for service within this Commonwealth.

(2) In the manner provided or prescribed by the law of the place in which the service is made for ser-

vice in that place in an action in any of its courts of general jurisdiction.

(3) By any form of mail addressed to the person to be served and requiring a signed receipt.

(4) As directly by the foreign authority in response to a letter rogatory.

(5) As directed by a court." (Emphasis added). Although subparagraph (3) supra might be fairly read as requiring the signature of the person to be served, it really does not so state and some ambiguity exists; subsection (b) resolves the matter by including this sentence:

"When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the tribunal."

Such other satisfactory evidence of personal delivery is present here. That the modes of service in the rules and the Judicial Code are cumulative alternatives, see: Explanatory Note, Goodrich-Amram 2d §2077(a) :1, June, 1983, Pamphlet Supplement pages 20-21; Civil Rule 2098; Judicial Code §5329.[9]

(c) Even if we should accept the defense view that defendant Gahagen was a Pennsylvania domiciliary and resident amenable to proper service in Pennsylvania, and that service by mail in Florida was an unauthorized mode of service, it does not follow that the service actually made there must be

9. We also note that the original rules on nonresident-concealing defendants did not prescribe when extra-state service is permissible, merely how such service could be accomplished when some statute authorized it as a matter of right. See: Goodrich Amram 2d §2077(a):1, pages 352-353. But amended Rule 2079(c) quoted ante, and as well subparagraph (d) thereof, prescribe not only the mode of extra-state service but expressly grant "the right" of such service.

stricken; where defendant can be served in Pennsylvania by an authorized mode of service, and is not prejudiced by service elsewhere by an unauthorized mode, such service will be sustained under Civil Rules 126 and 130 as we held in First National Bank v. Anderson and Hartman, 35 Somerset L. J. 23, 7 D.&C. 3d 627 (1977), summarized in Goodrich Amram 2d §1017(b) :7, 1983 Pamphlet Supplement page 9, and in 51 Pa. Bar Association Quarterly 151. Here defendant received the self-same process by mail in Florida as he would receive if properly served in Pennsylvania, his right to notice and opportunity to be heard are preserved, and he suffers no prejudice from sustaining the service.[10]

B. Service On Defendant Corporation:

Civil Rule 2180, as amended in 1979, also grants "the right" of extra-state service on corporations as follows:

"(c) Outside the Commonwealth, the plaintiff shall have the right of service within ninety days after the issuance of the writ or the filing of the complaint or the reissuance or reinstatement thereof

---

10. Compare Restatement of Judgments §8, Comment b, stating inter alia (pages 47-48):

"In construing statutes providing for methods of service of process upon the defendant, the present tendency is to hold that failure to comply strictly with the requirements of the statute does not make the [default] judgment void if the failure does not deprive the defendant of notice and an opportunity to be heard. Where, however, a statute makes certain requirements as to the giving of notice and the statute is not fully complied with, with result that there is substantially less likelihood that the defendant will receive notice, the [default] judgment may be void even though the notice actually given would have been sufficient if the statute had so provided."

That is consistent with First National Bank supra.

(1) by having a competent adult serve the defendant in the manner and upon any of the persons designated by subdivision(a); or

(2) in the manner provided by Rule 2079(c) (2), (3), (4) or (5); or

(3) in the manner provided by Section 5323 or 5329 (2) of the Judicial Code relating to service of process on persons outside the Commonwealth." Subparagraph (a) of that rule provides as follows:

"(a) Service of process within the county in which the action was commenced shall be made upon a corporation or similar entity by the sheriff of that county by handing an attested or certified copy of the process, as prescribed by Rule 1008,

(1) to an executive officer, partner or trustee of the corporation or similar entity; or

(2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity; or

(3) to an agent authorized by the corporation or similar entity in writing to receive service of process for it."

Subparagraph (1) supra thus authorizes corporate service upon an executive officer of the corporation, such as defendant Gahagen. Rule 2709(c) (3), quoted ante page 113 and discussed in relation to service on defendant Gahagen, allows service by certified mail outside the Commonwealth, and Judicial Code §5323, quoted ante page 116, allows certified mail without a receipt signed by the corporation (or for the corporation by an executive officer or corporate agent) as in the instant case; and First National Bank, supra, is also applicable to sustain corporate service here even if the method used was not authorized.

## ORDER

Now, February 14, 1984, defendants' motion for more specific pleading is sustained and plaintiff is allowed 30 days to amend the complaint consistent with the foregoing opinion; all other preliminary objections are overruled.